STATE OF NORTH CAROLINA v. DONALD E. SHUBERT

No. 9030SC524

(Filed 2 April 1991)

**1. Criminal Law § 78 (NCI4th)— pretrial publicity—refusal to change venue proper**

Defendant failed to show that the trial judge abused his discretion in denying defendant's motion for change of venue where defendant offered evidence of a newspaper article published one day preceding trial, but the article referred to neither defendant's nor the victim's name and only one paragraph referred to the incident involving defendant; defendant failed to show any prejudice by potential or actual jurors or that any juror was even aware of the article's existence; and defendant failed to show that he exhausted his peremptory challenges.

**Am Jur 2d, Criminal Law § 378.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

**2. Assault and Battery § 116 (NCI4th)— assault with deadly weapon with intent to kill inflicting serious injury—instruction on lesser offense not required**

In a prosecution of defendant for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err in failing to instruct on the lesser included offense of assault inflicting serious injury where the uncontradicted evidence showed that defendant's fists and feet were used as deadly weapons in that defendant repeatedly used them to cause the serious injuries to the defenseless 81-year-old female victim in a manner likely to produce death or great bodily harm, and that these injuries required extensive hospitalization and apparently caused permanent brain damage.

**Am Jur 2d, Assault and Battery §§ 48, 53, 58.**

**Kicking as aggravated assault, or assault with dangerous or deadly weapon. 33 ALR3d 922.**

### 3. Constitutional Law § 287 (NCI4th) — removal of court-appointed attorney — request denied

The trial court did not err in denying defendant's request to remove his court-appointed attorney and replace him with another attorney where defendant asserted little more than broad and general statements of dissatisfaction with his attorney.

**Am Jur 2d, Criminal Law § 982.**

### 4. Criminal Law § 53 (NCI3d) — assault victim — cause of injuries — expert medical testimony admissible

In a prosecution of defendant for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err in admitting into evidence the opinion testimony of the treating physician in the emergency room on the night of the beating and the testimony of the victim's personal physician who treated her during her two and one-half month hospitalization concerning the cause of injuries to the victim, since the witnesses were in a better position than the jury to formulate an opinion as to the cause of the victim's injuries. N.C.G.S. § 8C-1, Rule 702.

**Am Jur 2d, Assault and Battery § 96; Expert and Opinion Evidence § 211.**

**Admissibility, in prosecution for assault or similar offense involving physical violence, of extent or effect of victim's injuries. 87 ALR2d 926.**

### 5. Criminal Law § 43.4 (NCI3d) — photographs of assault victim — admissibility

The trial court did not err in admitting photographs of an assault victim taken at the hospital where the pictures were used for the proper purpose of illustrating a witness's testimony. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Assault and Battery § 96; Evidence §§ 785-787, 789, 790.**

**Admissibility, in prosecution for assault or similar offense involving physical violence, of extent or effect of victim's injuries. 87 ALR2d 926.**

STATE v. SHUBERT

[102 N.C. App. 419 (1991)]

6. **Criminal Law § 73 (NCI3d) — assault victim's statement to witnesses — testimony admissible**

Statements made by an unavailable assault victim to witnesses testifying at trial regarding the assault were admissible under N.C.G.S. § 8C-1, Rule 804(b)(5), since the State provided defendant with one week's notice of its intention to use the statements; defendant declared at trial that he had no problem with the amount of notice given; and the victim's statements offered the most probative evidence regarding the events which occurred in the victim's bedroom during the beatings.

**Am Jur 2d, Assault and Battery § 102; Evidence § 717.**

7. **Assault and Battery § 17 (NCI4th) — assault with deadly weapon — feet as deadly weapon — no variance between indictment and proof**

Evidence that the victim was hit with something harder than a fist and that human blood was found on defendant's shoes was sufficient to justify an inference that the assault was in part committed with defendant's feet, and therefore no fatal variance existed between the indictment which alleged assault with a deadly weapon, defendant's feet, and the offense proven.

**Am Jur 2d, Assault and Battery § 95.**

APPEAL by defendant from judgment entered 2 February 1990 in UNION County Superior Court by *Judge Marvin K. Gray.* Heard in the Court of Appeals 16 January 1991.

Defendant was charged with first degree burglary, assault with a deadly weapon with intent to kill inflicting serious injury.

At trial, the evidence tended to show the following: On 30 June 1990, defendant and Harold Purser were living at the Opportunity House, an alternative sentencing program run for persons on probation, operated by the Covenant Prison Ministries. The two had been drinking and at approximately 11:30 p.m. they left the Opportunity House and walked up the street past 902 Gill Street in Monroe, North Carolina, the home of Lizzie Price, the 81-year-old female victim. Harold Purser testified that defendant wanted to rob Lizzie Price. Before entering the home, defendant cut the victim's telephone line and opened a window with a butcher

knife that defendant had brought from the Opportunity House. After opening the window, defendant pushed Harold Purser through the window and Purser unlocked the front door for defendant. Once the defendant was inside, Harold Purser ran outside the house. Defendant later made Purser come inside and look for money. While inside the house Purser heard the victim yelling for help and saw her lying on the floor and defendant standing next to her. Purser then ran outside and returned to the Opportunity House. Shortly after midnight, the victim's neighbor, Myrl Elliott, saw the victim's bedroom lights on, went over to check on her, and found her in a pool of blood. Elliott ran home and telephoned the police. Fingerprints taken at the scene of the crime matched those of defendant. Also, defendant's tennis shoes had human bloodstains on them. On 31 August 1989 the police arrested defendant and Harold Purser.

As a result of the attack, Ms. Price suffered black eyes, bruises, a fractured right hip, and lacerations, including a facial laceration requiring stitches. Ms. Price also suffered chronic organic brain syndrome damage which left her mentally incompetent and unable to walk. These injuries caused Ms. Price to be hospitalized for one and one-half months at Union Memorial Hospital. Ms. Price was transferred from the hospital to Elliott White Springs Rebound Head Trauma Unit in Lancaster, South Carolina, where she still resided at the time of the trial.

A jury returned verdicts of guilty for both first degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury. From consecutive sentences of 50 years for first degree burglary and 20 years for assault with a deadly weapon with intent to kill inflicting serious injury, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Melissa L. Trippe, for the State.*

*John H. Painter for defendant-appellant.*

WELLS, Judge.

[1] Defendant first assigns error to the trial court's denial of defendant's motion for a change of venue. Defendant contends that he received an unfair trial due to negative pretrial publicity. N.C. Gen. Stat. § 15A-957 (1988) provides:

If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending

STATE v. SHUBERT

[102 N.C. App. 419 (1991)]

so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:

(1) Transfer the proceeding to another county in the prosecutorial district as defined in G.S. 7A-60 or to another county in an adjoining prosecutorial district as defined in G.S. 7A-60, or

(2) Order a special venire under the terms of G.S. 15A-958.

. . .

The burden is on the defendant to show the prejudice which allegedly prevents defendant from getting a fair trial. *State v. Boykin*, 291 N.C. 264, 229 S.E.2d 914 (1976). A motion for change of venue based upon prejudice against the defendant is addressed to the sound discretion of the trial judge and his decision will not be disturbed on appeal unless the defendant can show an abuse of discretion. *Id.*

Defendant contends that the trial court failed to exercise any discretion by summarily denying his motion without opportunity to present his case for change of venue. Before trial, defendant's counsel orally requested a change of venue and presented to the trial court one newspaper article reported one day preceding the trial. The article referred to neither the defendant's nor the victim's name and only one paragraph referred to the incident involving defendant.

Defendant fails to suggest how the article greatly prejudiced him and the courts of North Carolina have consistently held that factual news accounts regarding the commission of a crime and the pretrial proceedings alone are insufficient to establish prejudice against a defendant. *State v. Alford*, 289 N.C. 372, 222 S.E.2d 222, *death sentence vacated*, 429 U.S. 809 (1976). The *voir dire* examination of potential jurors was not recorded and is not a part of the record before this Court. Further, defendant failed to renew his motion following the *voir dire* examination of potential jurors or to show any prejudice by potential or actual jurors. Defendant also failed to show that defendant exhausted his peremptory challenges. In fact, defendant has failed to show that the article in any way intimates defendant was guilty or that any juror was even aware of the article's existence. When a defendant alleges prejudice on the basis of pretrial publicity and does not show that he exhausted his peremptory challenges, or that there were jurors who were objectionable or had prior knowledge of the case, defend-

ant has failed to carry his burden of establishing the prejudicial effect of the pretrial publicity. *State v. Harrill*, 289 N.C. 186, 221 S.E.2d 325, *death sentence vacated*, 428 U.S. 904 (1976). Therefore, we hold that defendant has failed to show that the trial judge abused his discretion in denying defendant's motion for change of venue.

[2] Defendant assigns error to the trial court's failure to instruct on the lesser included offense of assault inflicting serious injury. Although defendant failed to request such instructions and failed to object to the given instructions, defendant contends his objection is not waived. The trial court instructed on assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury. Defendant contends that the jury could have found that defendant's fists and feet were not deadly weapons had they been properly instructed.

An instruction on a lesser included offense is only required when there is some evidence to support the particular offense. *See State v. Little*, 51 N.C. App. 64, 275 S.E.2d 249 (1981), and cases cited and discussed therein. It is the presence of such evidence which determines whether it is necessary to instruct the jury on lesser included offenses. *State v. Norman*, 14 N.C. App. 394, 188 S.E.2d 667 (1972). A deadly weapon is "any instrument which is likely to produce death or great bodily harm, under the circumstances of its use. . . ." The deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself. *State v. Smith*, 187 N.C. 469, 121 S.E. 737 (1924). Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly within the foregoing definition is one of law, and the Court must take the responsibility of so declaring. . . . *State v. Parker*, 7 N.C. App. 191, 171 S.E.2d 665 (1970) (citation omitted). The uncontradicted evidence shows defendant repeatedly used his fists and feet to cause the serious injuries to the defenseless 81-year-old female victim in a manner likely to produce death or great bodily harm. These injuries required extensive hospitalization and apparently caused permanent brain damage. Under these facts the requested instruction was properly denied.

STATE v. SHUBERT

[102 N.C. App. 419 (1991)]

**[3]** Defendant assigns error to the trial court's denial of defendant's request to remove his court-appointed attorney and replace him with another attorney.

> The established law, however, is that the trial judge must satisfy himself only that the "present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective." "[T]he obligation of the court [is] to inquire into defendant's reasons for wanting to discharge his attorneys and to determine whether those reasons were legally sufficient to require the discharge of counsel." Once it becomes apparent that the assistance of counsel has not been rendered ineffective, the trial judge is not required to delve any further into the alleged conflict. The trial court's sole obligation when faced with a request that counsel be withdrawn is to make sufficient inquiry into defendant's reasons to the extent necessary to determine whether defendant will receive effective assistance of counsel. (Citations omitted).

*State v. Poole*, 305 N.C. 308, 289 S.E.2d 335 (1982). Defendant in this case asserts little more than broad and general statements of dissatisfaction with his attorney. Under these circumstances we find no abuse of the trial court's discretion in denying defendant's request for another attorney.

**[4]** Defendant assigns error to the trial court's admitting into evidence the opinion testimony of Drs. Berg and Trotter concerning the cause of the injuries to the victim. Defendant contends no proper foundation was laid for the opinion testimony. Defendant also contends that admitting this opinion evidence violated the purpose of Rule 702 of the North Carolina Rules of Evidence to admit expert testimony only if it will assist the trier of fact to understand or determine a fact in issue.

> Expert *testimony* is admissible when it "can assist the jury to draw certain inferences from facts because the expert is better qualified" than the jury to interpret the information presented. . . . The test for admissibility of expert testimony is simply "whether the jury can receive 'appreciable help' from the expert witness. . . ." A trial judge has "wide latitude of discretion" when determining the admissibility of expert testimony. (Citations omitted).

*State v. Purdie*, 93 N.C. App. 269, 377 S.E.2d 789 (1989). The record reveals that Dr. Berg was the treating physician in the emergency room on the night of the beating. Dr. Berg treated the victim's wounds for at least 40 minutes and examined her over the course of several hours. At trial, defendant made no objection when plaintiff tendered Dr. Berg as an emergency medicine expert. Dr. Trotter had been the victim's personal physician for four or five years and examined her the morning after her attack and continued to treat her for the two and one-half months during her hospitalization before her transfer to a rehabilitation unit in South Carolina. We hold that Dr. Berg and Dr. Trotter were in a better position than the jury to formulate an opinion as to the cause of the victim's injuries and the trial court properly exercised its discretion to admit such evidence.

[5] Defendant assigns error to the trial court's overruling of defendant's objection to and denial of a motion to suppress the State's photographic evidence. Defendant contends that the three photographs of the victim taken at the hospital were admitted solely to inflame the jury and should have been excluded pursuant to Rule 403 of the North Carolina Rules of Evidence.

The admissibility of photographic evidence is governed by Rule 403 which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. § 8C-1, Rule 403 (1986). Exclusion under the balancing test of Rule 403 of the North Carolina Rules of Evidence is within the trial court's discretion. *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988) (citation omitted). Abuse of discretion results when the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision. *Id.* In the instant case, the State introduced three photographs, one of the victim's facial and head injuries, one of the victim's arm injuries and one of the victim's leg injuries. Defendant's brief fails to show how the photographs were excessively prejudicial or cumulative. From the record before this Court, we can only determine that the pictures were used for the proper

purpose of illustrating the witness' testimony and, therefore, the trial court properly exercised its discretion.

[6] Defendant assigns error to the trial court's admitting statements made by the victim to witnesses testifying at trial regarding the assault. Defendant contends the victim's statements to the police officer and the victim's neighbor were admitted hearsay in violation of the North Carolina Rules of Evidence, Rule 804(b)(5) (1988). Rule 804 provides exceptions to the hearsay rule when the declarant is unavailable and, more particularly, section (b)(5) states:

> Other Exceptions. — A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

In his brief, defendant limits his argument to the two grounds that the admitted evidence was not more probative on the point for which it is offered than any other evidence and the State failed to give timely notice of its intention to offer such statements into evidence. The record reveals that the State provided defendant with written notice of its intention to use the victim's statements a week before defendant was required to meet the statement at trial. This notice, combined with defendant's declaration at trial that he had no problem with the amount of notice given, leads us to conclude that defendant had fair opportunity to meet the victim's statements. Also, we conclude that the victim's statements offer the most probative evidence regarding the events that occurred in the victim's bedroom during the beatings. Although other circumstantial evidence was offered in support of the fact that defendant entered the victim's room and beat her, the victim's

testimony is the only eyewitness account of the beating available to the court.

**[7]** Defendant assigns error to the trial court's denial of defendant's motion to dismiss at the close of the State's evidence on the grounds that a fatal variance exists between the indictment and proof. Defendant contends that the indictment charged defendant with "unlawfully, willfully, and feloniously did assault Lizzie Price with his feet, a deadly weapon, with the intent to kill and inflicting serious injury," but the evidence proved only the use of defendant's fists. Although defendant's fists could have been deadly weapons given the manner in which they were used and the relative size and condition of the parties, *see State v. Jacobs*, 61 N.C. App. 610, 301 S.E.2d 429 (1983), the evidence that the victim was hit with something harder than a fist and that human blood was found on defendant's shoes is sufficient to justify an inference that the assault was in part committed with defendant's feet and no fatal variance existed between the indictment and the offense proven. *See State v. Hobbs*, 216 N.C. 14, 3 S.E.2d 431 (1939).

No error.

Chief Judge HEDRICK and Judge ORR concur.