**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Howard ROSS, Respondent.**

**No. 91SC432.**

Supreme Court of Colorado, En Banc.

June 29, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Wendy J. Ritz, Asst. Atty. Gen., Appellate Section, Denver, for petitioner.

Law Office of Stanley H. Marks & Richard A. Hostetler, Richard A. Hostetler, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

The People of the State of Colorado (the People) petition from the court of appeals decision in *People v. Ross*, 819 P.2d 507 (Colo.App.1991), wherein the court of appeals determined that fists are not deadly weapons within section 18–1–901(3)(e), 8B C.R.S. (1986). The court of appeals reversed Ross' conviction for second degree assault on the elderly with a deadly weapon. We reverse and remand with directions.

I.

On February 26, 1988, Samuel Cohn (Cohn) was seventy-two years old. While playing golf with two companions, Cohn accidentally hit a red car traveling down a street adjacent to the golf course with his golf ball. Cohn approached the driver of the car, Howard Ross (Ross). Ross, then thirty years old, exchanged words with Cohn. Ross struck Cohn with a cupped hand. As a result of Ross' blow, Cohn was taken to an emergency hospital room where he was treated in a trauma unit by Dr. Riccio.

Ross was subsequently charged with second degree assault and second degree assault on the elderly with a deadly weapon. At Ross' trial, Dr. Riccio testified that Cohn sustained eight major fractures around his eyes, nose, and mouth. According to Dr. Riccio, Cohn's nose was essentially crushed. Dr. Riccio also testified that Cohn was at great risk of having severe permanent damage. Cohn testified that he was unable to fully close one eye and had his lower jaw replaced as a result of Ross' blow to his face.

A jury found Ross guilty of second degree assault pursuant to section 18–3–203(1)(a), 8B C.R.S. (1986), and assault on the elderly pursuant to section 18–3–209, 8B C.R.S. (1986).[1] Ross appealed his con-

---

1. Section 18–3–209, 8B C.R.S. (1986), provides in pertinent part:

   **18–3–209. Assault on the elderly or the handicapped....** (1) A person who commits second or third degree assault and the victim is a person who is sixty years of age or older or disabled because of the loss of or permanent loss of use of a hand or foot or because of blindness or the permanent impairment of vision in both eyes to such a degree as to constitute virtual blindness commits assault on the elderly or the handicapped.

   (2) If the assault on the elderly or the handicapped is second degree assault and is committed without the circumstances provided in section 18–3–203(2)(a) being present, it is a class 3 felony. If the assault on the elderly or the handicapped is second degree assault as defined in section 18–3–203(1)(b) or (1)(d),

   the court shall sentence the defendant in accordance with the provisions of section 16–11–309, C.R.S.

   Section 18–3–203(1)(a), 8B C.R.S. (1986), provides:

   **18–3–203. Assault in the second degree.** (1) A person commits the crime of assault in the second degree if:

   (a) With intent to cause serious bodily injury to another person, he does cause such injury to any person[.]

   Section 18–3–203(1)(b), 8B C.R.S. (1986), provides:

   (1) A person commits the crime of assault in the second degree if:
   ....
   (b) With intent to cause bodily injury to another person, he causes or attempts to

victions, and the court of appeals reversed his conviction of assault on the elderly with a deadly weapon. *Ross*, 819 P.2d at 508. The court of appeals premised its reversal on the grounds that a fist is not a deadly weapon. *Id.* The People appeal the reversal of the conviction of assault on the elderly with a deadly weapon.

## II.

The People present one issue for our consideration: whether a fist can be a deadly weapon as defined in section 18-1-901(3)(e). We find that it can.

Section 18-1-901(3)(e) provides:

"Deadly weapon" means any of the following which *in the manner it is used or intended to be used* is capable of producing death or serious bodily injury:

(I) A firearm, whether loaded or unloaded;

(II) A knife;

(III) A bludgeon; or

(IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

§ 18-1-901(3)(e), 8B C.R.S. (1986) (emphasis added). We have previously construed this section when considering whether various items were deadly weapons. *Williams v. People*, 687 P.2d 950, 954-55 (Colo.1984) (holding that an unloaded firearm is a deadly weapon as a matter of law); *Bowers v. People*, 617 P.2d 560, 562-63 (Colo.1980) (holding that a quart whiskey bottle may be a deadly weapon depending on the manner in which it is used); *People v. Bramlett*, 194 Colo. 205, 209, 573 P.2d 94, 96-97 (1977) (holding that any object used in a manner capable of producing death or bodily injury is a deadly weapon); *Miller v. District Court*, 193 Colo. 404, 407, 566 P.2d 1063, 1066 (1977) (holding that a firecracker in a bottle may be a deadly weapon depending on its actual or intended use); *see also Grass v. People*, 172 Colo. 223, 471 P.2d 602 (1970) (holding that a shoe may be a deadly weapon depending on the manner of its use, among other things, under a prior version of the section).

cause such injury to any person by means of a

We have consistently analyzed whether objects are deadly weapons by evaluating the manner in which the objects are used. *Bowers*, 617 P.2d at 563 (holding that an object may be a deadly weapon depending on how it is used); *Bramlett*, 194 Colo. at 209, 573 P.2d at 96-97 (holding that objects are deadly weapons if used in a particular manner); and *Miller*, 193 Colo. at 407, 566 P.2d at 1066 (holding that object's actual or intended use determines whether it is a deadly weapon). Our analysis has been controlled by the statutory definition of deadly weapons found in section 18-1-901(3)(e). Accordingly, we have noted that section 18-1-901(3)(e) "expressly prescribes a test to determine whether items other than firearms, knives, and bludgeons are deadly weapons, based not on the intrinsic nature of the items but *upon their use or intended use.*" *Bowers*, 617 P.2d at 562-63 (emphasis added).

■ The plain language of section 18-1-901(3)(e) supports our object-use test. Section 18-1-901(3)(e) expressly states that an object can be a deadly weapon if used in a particular manner. § 18-1-901(3)(e), 8B C.R.S. (1986); *see People v. Warner*, 801 P.2d 1187, 1190 (Colo.1990) (holding that there is no need to resort to interpretive rules where statutory language is clear and unambiguous); *Thiret v. Kautzky*, 792 P.2d 801, 806 (Colo.1990) (holding that it is unnecessary to examine its legislative history where the meaning of a statute is clear). The precise issue before us, however, is whether a fist can be a deadly weapon depending on the manner in which it is used. We find that it can.

## A.

Section 18-1-901(3)(e) segregates objects into two categories: items "deadly ... by their essential nature" (firearms, knives, and bludgeons), and "[a]ll other items." *Bowers*, 617 P.2d at 563. In *Bowers*, we found that the statute contemplates a scheme whereby objects not intrinsically deadly may become so, depending on the manner in which they are used. *Id.* Thus,

deadly weapon[.]

in *Bowers*, we found a quart bottle of whiskey to be a deadly weapon when used to strike a store owner on the head, causing him to suffer a concussion and several cuts. *Id.*

Fists have not been legislatively designated as inherently deadly weapons. Thus, if fists come within the ambit of "[a]ny other weapon, device, instrument, material, or substance, whether animate or inanimate," fists may be deadly weapons depending on the manner in which they are used. § 18–1–901(3)(e)(IV), 8B C.R.S. (1986).

We have not previously given that phrase a narrow or limiting construction. Rather, we have interpreted the phrase to include *any* object or device. *Bowers*, 617 P.2d at 563 (holding that any items in addition to those enumerated in the statute can be deadly weapons); *Bramlett*, 194 Colo. at 209, 573 P.2d at 96 ("[T]he statutory definition of 'deadly weapon' includes any object."); *Miller*, 193 Colo. at 407, 566 P.2d at 1066; *Grass*, 172 Colo. at 229, 471 P.2d at 605 (holding that instruments or things can be deadly weapons).

Our interpretation is consistent with the plain meaning of the words "weapon, device, instrument, material, [and] substance." [2] *See Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1173 (Colo.1991); *Charnes v. Lobato*, 743 P.2d 27, 30 (Colo. 1987) (Statutory terms are to be given effect according to their plain and obvious meaning). We are not persuaded that a deviation from our traditionally expansive view of this section is warranted with respect to fists. We thus conclude that fists may be deadly weapons if in the manner they are used or intended to be used they are capable of producing death or serious bodily injury. § 18–1–901(3)(e), 8B C.R.S. (1986).[3]

### B.

Our holding accords with the law of numerous other jurisdictions.[4] *Baker v. State*, 441 So.2d 1061, 1062 (Ala.Crim.App. 1983) (holding that fists may be deadly weapons depending on the manner of their use where a mother beat her twenty-one-month-old son with her fists, resulting in the infant's death); *Konrad v. State*, 763 P.2d 1369, 1373–74 (Alaska Ct.App.1988)

---

**2.** A "weapon" is defined as "an instrument of offensive or defensive combat, ... something ... used in destroying, defeating, or physically injuring an enemy." *Webster's Third New International Dictionary* 2589 (1969).

A "device" is defined as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." *Id.* at 618.

An "instrument" is defined as a "utensil, implement." *Id.* at 1172.

A "material" is defined as an "apparatus (as tools or other articles) necessary for doing ... something." *Id.* at 1392.

A "substance" is defined as "a distinguishable kind of physical matter[;] ... a piece or mass of such substance ... (cork is a [substance] with distinctive properties)[;] ... matter of definite or known chemical composition." *Id.* at 2279.

**3.** The court of appeals concluded that fists could not be deadly weapons because such an approach would make it "impossible to distinguish between second degree assault involving deadly weapons and those second degree assault offenses which do not." *People v. Ross*, 819 P.2d 507, 509 (Colo.App.1991). The court of appeals centered its discussion on subsections (1)(a) and (1)(b) of 18–3–203, 8B C.R.S. (1986); *see supra* n. 1.

The court of appeals opinion suggests that, if a fist is a deadly weapon, then all objects are deadly weapons. The court of appeals' construction of § 18–1–901(3)(e) fails to address the statutory test defining objects as deadly weapons. Not all objects will be deadly weapons; an object can only be a deadly weapon if in the manner it is used or intended to be used it is capable of producing death or serious bodily harm. § 18–1–901(3)(e), 8B C.R.S. (1986).

The court of appeals' reasoning also fails to recognize that the two separate sections have different *mens rea* requirements that stand apart from the means by which an accused commits the offense of second degree assault. Were we to adopt the court of appeals approach, we would essentially delete the language in § 18–1–901(3)(e) that requires examination of the manner in which an object is used. Should the General Assembly wish to exclude fists from the ambit of this section, it is free so to do.

**4.** *But see Roney v. Commonwealth*, 695 S.W.2d 863, 864 (Ky.1985) (finding that legislative intent was not clear with respect to whether fists are dangerous instruments); *Seiter v. State*, 719 S.W.2d 141, 143–44 (Mo.Ct.App.1986) (declining to classify hands as deadly weapons).

(holding that a hand may be deemed a dangerous instrument depending on the precise manner in which it is used); *Boling v. State*, 244 Ga. 825, 262 S.E.2d 123, 125 (1979) (holding that fists may be deadly weapons depending on the manner of their use where a husband asphyxiated his estranged wife); *Gabler v. State*, 177 Ga. App. 3, 338 S.E.2d 469, 472 (1985) (holding that fists may be deadly weapons depending on the manner of their use where an adult beat and kicked another adult, causing severe facial lacerations); *Pulliam v. State*, 298 So.2d 711, 713 (Miss.1974) (holding that fists may be deadly weapons depending on the manner of their use where two adults beat and kicked another adult, causing broken ribs and severe facial lacerations); *State v. Shubert*, 102 N.C.App. 419, 402 S.E.2d 642, 645 (1991) (finding that fists may be deadly weapons where defendant used his fists to beat an eighty-one-year-old victim, causing permanent brain damage); *State v. Zangrilli*, 440 A.2d 710, 711–12 (R.I.1982) (finding that hands may be a deadly weapon if used to produce substantial bodily harm where defendant beat and strangled his ex-wife); *Cooper v. State*, 773 S.W.2d 749, 750 (Tex.Ct.App. 1989) (holding that fists may be deadly weapons depending on the manner of their use where defendant caused infant's death by severe blows); *see also* 2 Wayne LeFave & Austin Scott, *Substantive Criminal Law* § 7.2, at 195 (1986) (observing that fists may be found to be deadly weapons in appropriate cases involving big men attacking small,[5] frail men, women or children).[6]

---

**5.** "Small" is defined as "having little size esp. as compared with other similar things: not large or extended in dimensions, girth, or mass." *Webster's Third New International Dictionary* 2149 (1969).

**6.** The court of appeals relied solely on *Commonwealth v. Davis*, 10 Mass.App.Ct. 190, 406 N.E.2d 417 (1980). The statute at issue in *Davis* is wholly different from § 18–1–901(3)(e). The *Davis* statute does not purport to define deadly weapons because the statute is not concerned with deadly weapons. 406 N.E.2d at 419. The statute is conversely concerned with assault upon a person sixty-five years or older by means of a dangerous weapon. Mass.Gen.Laws Ann. ch. 265, § 15A (1990). The *Davis* court

## III.

■ Lastly, we must ascertain whether the manner in which Ross used his fist was capable of producing death or serious bodily injury. Ross admitted at trial that he struck Cohn. As a result of the blow, Cohn was taken to Denver General Hospital where he was admitted and treated for major trauma. Dr. Riccio, Cohn's treating physician, testified that Cohn sustained multiple facial fractures and was at great risk of sustaining severe permanent damage.

The facts compel us to conclude that Ross used his fist as a deadly weapon within the meaning of section 18–1–901(3)(e) when he hit Cohn and caused Cohn's injuries. Accordingly, we reverse the court of appeals decision and remand to the court of appeals with directions to reinstate the judgment of conviction and sentence.

LOHR, J., dissents.

Justice LOHR dissenting:

The majority holds that under the circumstances of this case, the defendant used his fist as a deadly weapon as that term is defined in section 18–1–901(3)(e), 8B C.R.S. (1986). Because the common understanding of the language of section 18–1–901(3)(e) and the structure of that section limit the definition to objects independent of the human body, and because even if the statute is ambiguous on this point, the rule of lenity requires us to construe penal stat-

---

was confronted with the issue of whether teeth are dangerous weapons where a defendant bit off a piece of the victim's left ear. 406 N.E.2d at 419. The *Davis* court noted that the judiciary generally has defined what constitutes a dangerous weapon. *Id.*

Such is not the case here. First, our analysis of what constitutes a deadly weapon is governed by statute. Second, the facts of the present case are markedly different than those in the *Davis* case where no fist was actually used. Third, relying on cases decided primarily in the 1940s through 1950s, the *Davis* court's assertion that a majority of jurisdictions do not recognize body parts as deadly weapons has been contradicted by the weight of more recent authority.

utes in favor of the accused, I respectfully dissent.

The defendant, Howard Ross, was charged with and convicted of second-degree assault[1] and assault on the elderly by means of a deadly weapon.[2] These convictions resulted from a dispute between Ross and seventy-two-year-old Samuel Cohn during which Ross struck Cohn with his hand,[3] severely injuring Cohn. Ross challenges his conviction for assault on the elderly by means of a deadly weapon on the basis that a fist is not a deadly weapon under Colorado law.

Definitions of the term "deadly weapon," whether statutory or judicial, vary from jurisdiction to jurisdiction. In employing these assorted definitions courts have disagreed concerning whether a fist may be considered a deadly weapon. The majority has referred to several decisions holding that a fist, in certain circumstances, is a deadly weapon. Maj. op. at 1314. Other courts, however, have held that fists do not constitute deadly weapons. *E.g., Roney v. Commonwealth*, 695 S.W.2d 863, 864 (Ky. 1985) (court held instruction authorizing conviction for aggravated assault if jury believed defendant's fists and feet were dangerous instruments was erroneous); *Commonwealth v. Davis*, 10 Mass.App.Ct. 190, 406 N.E.2d 417, 420–21 (1980) (court announced per se rule that human teeth and other body parts should be removed from consideration as dangerous weapons); *People v. Van Diver*, 80 Mich.App. 352, 263 N.W.2d 370, 373 (1978) (court held that term dangerous weapon cannot be interpreted to encompass the bare hand). In Colorado, the term deadly weapon is defined by statute. Section 18–1–901(3)(e) provides:

"Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury:

(I) A firearm, whether loaded or unloaded;

(II) A knife;

(III) A bludgeon; or

(IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

"Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly." *People v. District Court*, 713 P.2d 918, 921 (Colo. 1986); *accord, e.g., State v. Hartsough*, 790 P.2d 836, 838 (Colo.1990). To determine legislative intent we look first to the language of the statute. *District Court*, 713 P.2d at 921; *B.B. v. People*, 785 P.2d 132, 138 (Colo.1990). Statutory terms and phrases should be given their plain and obvious meanings, *People v. Owens*, 670 P.2d 1233, 1236 (Colo.1983), and not strained or forced interpretations, *Hartsough*, 790 P.2d at 838.

In holding that a fist is a deadly weapon within the meaning of section 18–1–901(3)(e) in this instance, the majority focuses on the intended use of Ross's fist. I agree that when determining whether an object other than a firearm, knife, or bludgeon is a dangerous weapon, we must look to the manner of its use or intended use. *See Bowers v. People*, 617 P.2d 560, 562–63 (Colo.1980). However, such an analysis does not obviate the need to determine first whether the object being considered is a "weapon, device, instrument, material, or substance" within the meaning of section 18–1–901(3)(e). I disagree with the majority that a fist falls within the plain meaning of the phrase "[a]ny other weapon, device, instrument, material, or substance, whether animate or inanimate." § 18–1–901(3)(e)(IV). The enumerated terms are not commonly understood as referring to a part of the human anatomy. *See Roney*, 695 S.W.2d at 864. The majority does not explain or support the contention that these terms, as they are *commonly* understood, encompass a human fist.[4]

---

1. § 18–3–203(1)(a), 8B C.R.S. (1986).

2. § 18–3–209(1), (2), 8B C.R.S. (1986).

3. Ross struck Cohn with a cupped hand; the parties refer to this as a fist.

4. The fact that the definition extends to animate as well as inanimate objects does not lend support to the majority's construction of § 18–1–901(3)(e). The term "animate" was likely included in the statute so that the term deadly

Moreover, the structure of section 18–1–901(3)(e) demonstrates a legislative intent not to include a human fist within the definition of the term "deadly weapon." According to a familiar rule of statutory construction, where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. *Martinez v. People*, 111 Colo. 52, 57–58, 137 P.2d 690, 692–93 (1943); *accord People v. District Court*, 808 P.2d 831, 836 (Colo.1991). In section 18–1–901(3)(e), the language "[a]ny other weapon, device, instrument, material, or substance" is preceded by a list of specific items—a firearm, a knife, and a bludgeon—that may be utilized by persons to inflict injury but remain distinct and separate from the human body. Accordingly, the more general phrase that follows should also be restricted to such items.

It is also important that this case involves the construction of a penal measure because "Colorado criminal statutes are to be strictly construed in favor of the accused." *People v. Roybal*, 618 P.2d 1121, 1125 (Colo.1980); *Van Gerpen v. Peterson*, 620 P.2d 714, 715 (Colo.1980). Should there be ambiguity in a criminal statute, the construction favoring the defendant must be adopted. In *People v. Newton*, 764 P.2d 1182, 1189 (Colo.1988) we explained that

> [w]hen ... an ambiguity in a criminal statute renders it capable of alternative and conflicting constructions, it is appropriate to resort to the rule of lenity in an effort to arrive at an appropriate interpretation. The rule of lenity requires that in resolving such a statutory ambiguity the construction that favors the liberty interests of the accused should be adopted.

(Citations omitted.) *Accord S.G.W. v. People*, 752 P.2d 86, 88 (Colo.1988). In accord with this rule of statutory interpretation,

even if section 18–1–901(3)(e) is not entirely clear, it must be construed so that human fists do not fall within the definition of the term deadly weapon. *See Roney*, 695 S.W.2d at 864 (court applies rule of lenity to exclude fists from definition of term "dangerous instrument" because it is not clear whether the legislature intended that fists be considered a dangerous instrument as that term is used in the first-degree assault statute).

For the foregoing reasons, I respectfully dissent.

---

weapon would include vicious animals. *See People v. Nealis*, 283 Cal.Rptr. 376, 379, 232 Cal.App.3d Supp. 1 (1991) ("depending upon the circumstances of each case, a dog trained to attack humans on command, ... may be considered a 'deadly weapon or instrument' within

the meaning of [the relevant statute]"); *State v. Bowers*, 239 Kan. 417, 721 P.2d 268, 274 (1986) ("a Doberman pinscher is not a deadly weapon per se, but an ordinary object *used* in a deadly manner is a deadly weapon within the meaning of [the relevant statute]" (emphasis in original)).