507 P.3d 1018
2022 COA 1
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Joshua Alan STRICKLER, Defendant-Appellant.
Court of Appeals No. 18CA2334
Colorado Court of Appeals, Division VII.
Announced January 6, 2022
Philip J. Weiser, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
Megan A. Ring, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
Opinion by JUDGE GROVE
¶ 1 Defendant, Joshua Alan Strickler, appeals his convictions for attempted first degree extreme indifference murder, attempted first degree arson, and attempted criminal mischief. We affirm the convictions for attempted first degree extreme indifference 507 P.3d 1020 murder and attempted first degree arson, and in doing so conclude that Strickler was properly convicted of a crime of violence because fire, as Strickler used it, met the statutory definition of "deadly weapon." However, we remand with directions to merge Strickler's conviction for attempted criminal mischief into his conviction for attempted first degree arson.
I. Background
¶ 2 After receiving a report of a structure fire at the Lone Rose Apartments, first responders entered the building and noticed a haze of smoke in the second floor hallway. Firefighters pinpointed one apartment as the source of the smoke, and, when forcing entry through the deadbolted door saw towels jammed into the spaces at the top and bottom of the doorframe. As the firefighters opened the door, a large amount of smoke escaped.
¶ 3 The apartment was Strickler's. It was unoccupied when the firefighters entered, but they observed burners on the gas stovetop that were lit and heaped with burning clothes and what appeared to be charcoal. Behind the stove, which was pulled away from the wall, the firefighters found a smoldering portable grill. The grill was placed under the gas line that connected the stove to the wall, and materials in it were on fire.
¶ 4 Earlier that day, Strickler had called the police to report a threat made by a man named Gary Cox, who was staying in an apartment in the same building with his wife, Stefanie Reel.[1] Strickler reported that Cox had tried to kick in his apartment door, and he showed the officer text messages sent by Reel from around the same time warning Strickler not to answer his door because "Gary" was "pisse[d]." The officer spoke to Cox on the phone and Reel in person. Reel did not deny sending the text messages, but as the officer recalled at trial, she claimed that they were referring to "a different Gary than Gary Cox." The officer did not take any further action.
¶ 5 According to the officer, Strickler became "upset" when he learned that she "wasn't making or wasn't able to make an arrest on the case," and, as the officer prepared to leave, Strickler said, "I'll do what I have to do then." Strickler set the fires in his apartment a few hours after the officer left. He passed by another tenant as he left the building, and as he did so, he said, "[W]ell, let's see how this goes."
¶ 6 Strickler called 911 to report the smell of smoke at his apartment nearly twenty minutes after he left it with clothes burning on the stove and a lit portable grill placed directly under the gas line. A fire investigator testified that the plastic portions of the gas line had melted from the heat, and that "the manner in which [the portable grill] was placed could have caused significant damage — not only structurally to the building, but potential mass loss of life for all involved — not only the occupants of this building, but responders called to the scene, as well."
¶ 7 Strickler was tried on charges of first degree arson, attempted first degree arson, attempted criminal mischief, and two counts of attempted extreme indifference murder. One of the attempted extreme indifference murder charges named Stefanie Reel as the victim; the other named as victims "tenants or residents of the Lone Rose Apartments." Both attempted extreme indifference murder charges were alleged to be crimes of violence.
¶ 8 The jury acquitted Strickler of first degree arson and of attempting to murder Stefanie Reel specifically. It found Strickler guilty of the other count of attempted extreme indifference murder, attempted first degree arson, and attempted criminal mischief.
II. Analysis
¶ 9 Strickler contends that (1) he was improperly convicted of a crime of violence because fire does not meet the statutory definition of "deadly weapon"; (2) the trial court improperly admitted evidence about the disappearance of fire extinguishers and damage to exit signs in the building during 507 P.3d 1021 the weeks before the fire; and (3) attempted criminal mischief is a lesser included offense of attempted first degree arson. We address each issue in turn.
A. Fire as a "Deadly Weapon"
¶ 10 Strickler contends that fire does not meet the statutory definition of deadly weapon, and that he therefore should not have been subject to the crime of violence sentence enhancer. We disagree.
1. Applicable Law ¶ 11 We review sufficiency of the evidence claims de novo to determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." People v. Donald , 2020 CO 24, ¶ 25, 461 P.3d 4 (citation omitted). We may not reweigh the evidence or substitute our judgment for that of the jury, People v. Rivas , 77 P.3d 882, 891 (Colo. App. 2003), and we must "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence," People v. Perez , 2016 CO 12, ¶ 25, 367 P.3d 695 (citation omitted).
¶ 12 As relevant here, attempted first degree murder is subject to a crime of violence sentence enhancement if the defendant "[u]sed, or possessed and threatened the use of, a deadly weapon." § 18-1.3-406(2)(a)(I)(A), C.R.S. 2021. "Deadly weapon" is defined as "[a] knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury." § 18-1-901(3)(e)(II), C.R.S. 2021.
2. Analysis ¶ 13 The prosecution charged Strickler with a crime of violence sentence enhancer in connection with both attempted extreme indifference murder charges. Count 4 of the "Amended Complaint and Information" alleged that Strickler "unlawfully used, or possessed and threatened the use of, a deadly weapon, namely: fire, a dangerous or deadly weapon, during the commission of, attempted commission of, conspiracy to commit, or the immediate flight from the offense of Attempted Murder – Extreme Indifference." Consistent with the statutory definition, the trial court instructed the jury that "[a] ‘deadly weapon’ means a knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury." On the verdict form for Count 4, the jury found that Strickler "use[d], or possess[ed] and threaten[ed] the use of, a deadly weapon."
¶ 14 Citing People v. Ross , 831 P.2d 1310, 1313 (Colo. 1992), abrogated by Montez v. People, 2012 CO 6, 269 P.3d 1228, which analyzed an earlier but similar version of section 18-1-901(3)(e), Strickler contends that our supreme court has declared that "only a discrete list of ‘objects’ can be deadly weapons." Thus, he argues, because fire is not an "object," it does not fall within the statutory definition of "deadly weapon."[2] ¶ 15 The People respond that another division of this court has already rejected an argument similar to the one that Strickler raises here. See People v. Magana , 2020 COA 148, 490 P.3d 948 (cert. granted May 24, 2021). But Magana addressed a different issue: whether fire can be the basis for a crime of violence sentence enhancement for first degree arson even though it is also an element of first degree arson. Id. at ¶ 60. The division did not consider the scope of the definition of "deadly weapon" under section 18-1-901(3)(e)(II).
¶ 16 Nonetheless, we reject Strickler's contention because we do not read Ross as limiting the definition of "deadly weapon" to "objects." True, the weapon in question in Ross — a fist — was an "object." 831 P.2d at 1312. And the court noted that it had previously 507 P.3d 1022 interpreted "[a]ny other weapon, device, instrument, material, or substance" broadly, "to include any object or device." Id. at 1313 ; see Bowers v. People , 617 P.2d 560, 563 (Colo. 1980) (holding that items other than those specifically enumerated in the statute can be deadly weapons); People v. Bramlett , 194 Colo. 205, 573 P.2d 94, 96 (1977) ("[T]he statutory definition of ‘deadly weapon’ includes any object...."). But neither Ross nor any of the cases that it relied on had occasion to consider whether the means of committing the crime must be an "object," as that phrase is commonly understood, in order to qualify as a deadly weapon. That is, while our supreme court has held that using an "object" to commit the crime may be sufficient to satisfy the "deadly weapon" sentence enhancer, it has not held that it is necessary for a defendant to have used an "object" for the definition of "deadly weapon" to apply.
¶ 17 In fact, Ross ’s survey of the "plain meaning of the words ‘weapon, device, instrument, material, [and] substance’ " suggests just the opposite. 831 P.2d at 1313 & n.2. Relying on the dictionary to shed light on each of these terms, the court in Ross defined "weapon" as "an instrument of offensive or defensive combat, ... something ... used in destroying, defeating, or physically injuring an enemy." Id. (quoting Webster's Third New International Dictionary 2589 (1969)). Metaphysical questions about the meaning of "object" aside, fire falls within the scope of this definition of "weapon." It has been used in war for millennia. See, e.g. , W. Hays Parks, Means and Methods of Warfare , 38 Geo. Wash. Int'l L. Rev. 511, 512 (2006) ("Use of fire as a weapon has been traced back to the ninth century B.C."). And it can be used to destroy, defeat, or physically injure others.
¶ 18 Nor would our conclusion change if, as Strickler argues, Ross in fact decided that only "objects" can be deadly weapons. Indeed, one of Ross ’s definitions of "substance" — "matter of definite or known chemical composition," 831 P.2d at 1313 n.2 (quoting Webster's Third New International Dictionary 2279 (1969)) — applies directly to Strickler's description of fire: "a chemical chain reaction producing heat and light." Employing similar reasoning, other state courts construing statutes similar to section 18-1-901(3)(e)(II) have rejected arguments that fire is not a tangible thing, thus effectively classifying it as an "object." See, e.g. , Taylor v. State , 735 S.W.2d 930, 948-49 (Tex. App. 1987) ("[W]e conclude that fire is not intangible combustion ... but includes the tangible aspects of the combustion, light and heat, as well as its effects."), abrogated on other grounds by Gaines v. State , 761 S.W.2d 2 (Tex. Crim. App. 1988) ; see also Mims v. State , 335 S.W.3d 247, 250 (Tex. App. 2006) (holding that fire is a "thing" because "[i]t undeniably has an objective existence or reality"); State v. Idlebird , 896 S.W.2d 656, 665 (Mo. Ct. App. 1995) (noting that fire's "tangible aspects, including heat and light ... arguably bring it within the term ‘substance’ " as used in the Missouri statute defining "dangerous instrument"), overruled on other grounds by State v. Williams, No. WD 60855, 2003 WL 1906460, at *11 (Mo. Ct. App. Apr. 22, 2003) (unpublished opinion), aff'd , 126 S.W.3d 377, 384 (Mo. 2004).
¶ 19 Thus, fire qualifies as a deadly weapon under at least two of the categories listed in section 18-1-901(3)(e)(II). And because there was ample evidence presented to support a finding that Strickler's use of fire rendered it capable of producing death or serious bodily injury, we conclude that the evidence was sufficient to support his conviction for the crime of violence sentence enhancer.
B. Evidence of Missing Fire Extinguishers and Damaged Exit Signs
¶ 20 Strickler contends that the trial court improperly allowed the lead detective to testify about the unexplained disappearance of fire suppression and detection equipment and damage to exit signs that occurred at some time before Strickler set fire to his apartment.[3] We perceive no basis for reversal.
507 P.3d 1023 1. Standard of Review and Preservation ¶ 21 We review a trial court's evidentiary ruling for an abuse of discretion. People v. Stewart , 55 P.3d 107, 122, 125 (Colo. 2002). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misinterprets or misapplies the law. People v. Williams , 2019 COA 32, ¶ 21, 446 P.3d 944.
¶ 22 The parties disagree about preservation, but we conclude that Strickler's motion in limine, in which he argued that the court should exclude evidence of the missing and damaged equipment, was sufficient to preserve the issue for our review. We therefore review his contention for harmless error and will disregard any error only if we can say with fair assurance that, in light of the entire trial record, the error did not substantially influence the verdict or impair the trial's fairness. See Stewart , 55 P.3d at 124.
2. Additional Background
¶ 23 At the preliminary hearing, the lead detective testified, "I was informed by the property manager ... that over the weeks leading up to the arson there have been mysterious disappearances of fire extinguisher, fire – or smoke detectors, and a disabling of the fire exit emergency signs on the building." On cross-examination, however, he admitted that he had no evidence that Strickler was responsible for these events; during his interviews with tenants, they denied seeing Strickler tamper with them; and missing fire extinguishers and smoke detectors were not found in Strickler's apartment.
¶ 24 After the preliminary hearing, Strickler moved in limine to exclude evidence about the missing fire extinguishers, smoke detectors, and damaged emergency exit signs as irrelevant and prejudicial, pointing out that "there is no evidence at all that Mr. Strickler was responsible for removing fire alarms, removing fire extinguishers, or dismantling exit signs." In response, the People argued that the evidence was relevant "because the removal of the fire extinguishers, fire alarms and disabling of the exit signs makes it more probable than not that [Strickler] planned to set fire to the building." The People conceded that "the alarms and extinguishers were never found in [Strickler's] possession," but asserted that "the evidence present[ed] at trial will show that the devices were removed from the building within two weeks of [Strickler's] attempt[ ] to set fire to the building."
¶ 25 The trial court, without an evidentiary hearing, denied the motion in limine as to the statements, and ruled:
This information is relevant as to whether or not [Strickler] planned to do what he is alleged to have done. It certainly goes to his state of mind and the planning put in to the fires. The court does not find the evidence's probative value to be outweighed by the danger of unfair prejudice. This is particularly so when the court gives the evidence i[t]s maximum probative value and minimum prejudicial value. The weight the jury gives the evidence will be left to the jury.
¶ 26 In his opening statement, the prosecutor told the jury to expect testimony from the property manager that "in the weeks leading up to [the fire], he had noticed that fire extinguishers had started to go missing in the complex," and that on the date of the fire, "he noticed ... that the exit signs had been tampered with." He conceded, however, that "other residents" of the apartments would testify "that they never saw fire extinguishers in the complex."
¶ 27 The evidence presented to the jury on this issue differed substantially from the preliminary hearing. Although the lead detective again testified for the prosecution, he did not mention missing or damaged fire protection equipment during his direct examination, and during defense counsel's cross-examination, he admitted that he had "no evidence that Mr. Strickler had done anything with any of the fire extinguishers, exit signs, fire alarms, et cetera."
¶ 28 The property manager also testified about the fire safety equipment. When asked whether he "notice[d] anything out of the ordinary with regards to the exit signs" on the second floor, he responded that "[t]hey 507 P.3d 1024 were broken. The fire department ... pointed out that they were broken, and they were just kind of dangling there." He did not suggest that Strickler had damaged the signs, but he explained that the damage must have been recent because "[t]hey were dangling so much that it would have been something that I would have noticed, or a tenant would have noticed and probably said something — because they were hanging pretty low." When asked about the fire extinguishers, however, the property manager said that he "didn't notice anything about them," and denied that he had "had any issue with fire extinguishers going missing" in the weeks leading up to the fire. In response to questions by the jury, the property manager described the locations of the exit signs, clarified that the building had failed an inspection shortly before the fire because the fire extinguishers were past their expiration dates, and confirmed that "as far as [he] kn[e]w," none of the fire extinguishers were missing on the date of the fire.
¶ 29 The prosecutor also briefly addressed the issue with the fire investigator, who had noted that when he entered the building, he saw "a fire extinguisher box or housing with an extinguisher missing." As the investigator explained, however, that did not cause him concern at the time "because typically we would think someone was there to help — grab the extinguisher and try to help."[4] 3. Analysis ¶ 30 Strickler argues that evidence of the missing and damaged fire safety equipment was improperly admitted. He suggests that the appropriate framework for the admissibility of this evidence is either CRE 404(b) or res gestae. Under either theory, Strickler argues, the evidence was inadmissible because the prosecution did not offer any evidence that linked him to the damage to or disappearance of the equipment.
¶ 31 The People disagree with both Strickler's proposed framework and his res gestae and CRE 404(b) analysis. They first argue that the evidence was "directly relevant" to the question whether "he acted with reckless disregard to the safety of other tenants." According to the People, "[t]he circumstances and timing of the damage to the exit signs in particular raised the inference Strickler caused this damage around the time that he set the fire and left the complex." In the alternative, the People argue that the evidence was admissible as res gestae and under CRE 404(b).
¶ 32 We conclude that we need not consider the merits of Strickler's arguments because, even if the evidence was improperly admitted, any error was harmless. At the threshold, evidence that fire extinguishers or smoke detectors had in fact gone missing was extraordinarily thin. Damage to or theft of smoke detectors was never mentioned at trial,[5] and, as discussed above, the property manager denied that any of the fire extinguishers had disappeared. While the fire investigator noted that there was an empty fire extinguisher box in the second floor hallway, he also testified that its absence was unsurprising under the circumstances.
¶ 33 With respect to the exit signs, there was uncontradicted testimony that they had been damaged, but there was no evidence presented that Strickler had tampered with them. The issue was mentioned only briefly and went entirely unaddressed in closing argument. ¶ 34 In reviewing for harmless error, we examine a number of factors, including the importance of the witness's testimony to the prosecution's case, whether the testimony was cumulative, and the overall strength of the prosecution's case. Blecha v. People , 962 P.2d 931, 942 (Colo. 1998). The single most important factor in harmless error inquiry is whether the case was "close." People v. Casias , 2012 COA 117, ¶ 69, 312 P.3d 208. To assess the "closeness" of this case, we consider not only whether the other evidence was sufficient to convict but also 507 P.3d 1025 whether it was sufficiently powerful in relation to the evidence of missing and damaged equipment to give fair assurance that that evidence did not substantially sway the jury to its verdict. See id. (citing United States v. Ince , 21 F.3d 576, 584 (4th Cir. 1994) ).
¶ 35 The evidence of Strickler's actions and intent in this case was not close; it strongly demonstrated that he acted "[u]nder circumstances evidencing an attitude of universal malice manifesting an extreme indifference to the value of human life generally," and "knowingly engage[d] in conduct which create[d] a grave risk of death to a person, or persons, other than himself." § 18-3-102(1)(d), C.R.S. 2021. After an altercation with others in the building, he made implied threats directed toward one or more residents when speaking to a police officer. Several hours later, Strickler set two fires in his apartment — one of which was left smoldering under an active gas line located behind a stove that had been pulled away from the wall — before leaving the building. On his way out, he stuffed towels or clothing into the edges of the doorframe, thus ensuring that smoke from the fires would not be immediately apparent. And rather than immediately reporting the fire, Strickler rode away on his bike and called 911 only after twenty minutes had passed.
¶ 36 The importance and persuasiveness of the evidence surrounding the allegedly missing and damaged equipment paled in comparison to the overwhelming proof of Strickler's actions and intent. As noted above, the evidence challenged on appeal went unmentioned in closing argument, and defense counsel elicited testimony from several witnesses highlighting the fact that no one had seen Strickler damage the signs or remove any fire extinguishers. Moreover, the jury acquitted Strickler of the attempted murder of Reel and of first degree arson. Cf. People v. Delgado-Elizarras , 131 P.3d 1110, 1112-13 (Colo. App. 2005) (holding that any error in the admission of other act evidence was harmless where the evidence of the defendant's guilt was overwhelming and the defendant's acquittal on a greater charge and conviction on only the lesser offenses "demonstrate that the jury based its verdicts on evidence of [the] defendant's conduct at the scene, and not on any conclusions regarding [the] defendant's propensity to engage in criminal conduct"). Accordingly, he has not demonstrated that he was so prejudiced by the admission of that evidence as to justify reversal.
C. Attempted Criminal Mischief as a Lesser Included Offense ¶ 37 Finally, Strickler contends that attempted criminal mischief is a lesser included offense of attempted first degree arson, and that the trial court therefore erred by failing to merge the conviction for attempted criminal mischief into his conviction for attempted first degree arson. See People v. Welborne , 2018 COA 127, ¶ 22, 457 P.3d 71. The People concede this point. We agree and thus vacate Strickler's conviction for attempted criminal mischief. See id. at ¶ 26.
III. Conclusion
¶ 38 We vacate Strickler's conviction for attempted criminal mischief, and we remand the case to the trial court to merge the attempted criminal mischief conviction into the attempted first degree arson conviction, and to correct the mittimus accordingly. In all other respects, the judgment is affirmed.
JUDGE NAVARRO and JUDGE PAWAR concur.
--------
Notes:
[1] The apartment appears to have been leased to Reel. Cox admitted that he was staying there but denied being a "resident" because Reel had a restraining order against him.
[2] As Strickler correctly points out, fire is not a per se deadly weapon. See § 18-1-901(3)(e)(I), C.R.S. 2021.
[3] On appeal, Strickler does not contend that this alleged error had any effect on his attempted arson and criminal mischief convictions. Thus, because his argument focuses solely on the effect of the evidence on the attempted murder charges, we consider his claims of prejudice only with respect to that conviction.
[4] The investigator did add that there was no evidence that anyone had used a fire extinguisher in Strickler's apartment, but the prosecutor did not follow up on that comment or refer to it again.
[5] In fact, more than one witness realized that there was a fire in the building only when alarms started sounding.
--------