**Gary Scott BOWERS, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 79SC240.**

Supreme Court of Colorado,
En Banc.

Oct. 6, 1980.

Carl F. Manthei, Boulder, for petitioner.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for respondent.

LOHR, Justice.

We granted certiorari to review the decision of the court of appeals[1] which affirmed the conviction of the defendant, Gary Scott Bowers, for aggravated robbery, section 18–4–302, C.R.S. 1973. We conclude that the trial court did not err in refusing to instruct the jury on the lesser included offense of robbery, section 18–4–301, C.R.S. 1973. Accordingly, we affirm the decision of the court of appeals.

On January 12, 1977, a robbery was committed at a liquor store in Longmont, Colorado. The defendant and another young man entered the store shortly before closing time. Mr. and Mrs. Newton, the owners of the store, were the only other persons present. One of the men brought two bottles of liquor to the counter. While Mr. Newton was reaching for a sack in which to place the liquor, one of the robbers struck him from behind with a quart bottle of whiskey. The blow shattered the bottle, knocked Newton to the floor, and rendered him unconscious. Mrs. Newton, who was in the back room of the store watching television, heard but did not see the blow. As she came toward the front of the store to investigate, she was struck in the face by one of the men and fell to the floor. The robbers escaped with cash and a case of beer. Mr. Newton suffered a concussion, a cut on the neck, and cuts in his head. The cuts required several stitches.

The defendant was charged with aggravated robbery pursuant to section 18–4–302(1)(c), C.R.S. 1973, which provides:

"(1) A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom:

.    .    .    .    .

"(c) He has present a confederate, aiding or abetting the perpetration of the robbery, armed with a deadly weapon, with the intent, either on the part of the defendant or confederate, if resistance is offered, to kill, maim, or wound the person robbed or any other person, or by the use of force, threats, or intimidation puts the person robbed or any other person in reasonable fear of death or bodily injury."

At the time of the alleged offense, the lesser included offense of robbery was defined in section 18–4–301, C.R.S. 1973, as follows:[2]

"18–4–301. Robbery. (1) A person who takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery."

Colo.Sess.Laws 1977, ch. 224, 18–4–301 at 963. The amended section applies to offenses alleged to have been committed on or after July 1, 1977.

---

1. *People v. Bowers*, Colo.App., 600 P.2d 95 (1979).

2. The legislature amended section 18–4–301 to require the offense be done "knowingly."

The trial court instructed the jury on aggravated robbery but refused the defendant's request that the jury be instructed on the lesser included offense of robbery. The defendant contends that, even if robbery was proved, two questions of fact must be resolved before it can be determined whether the robbery was an aggravated robbery. These issues are: (1) whether the whiskey bottle with which Mr. Newton was struck was a deadly weapon; and (2) whether the person robbed or any other person was put in reasonable fear of death or bodily injury by use of a deadly weapon. Therefore, he contends that the jury should have been instructed on the lesser included offense of robbery. We disagree.

## I.

■ When a jury could entertain a reasonable doubt of a defendant's guilt of a greater offense and simultaneously be convinced beyond a reasonable doubt of that defendant's guilt of a lesser included offense, the defendant is entitled to have the jury instructed on the lesser included offense. *Hollon Jr. v. People*, 170 Colo. 432, 462 P.2d 490 (1969); *People v. Futamata*, 140 Colo. 233, 343 P.2d 1058 (1959); *see People v. Pacheco*, 191 Colo. 499, 553 P.2d 817 (1976). This is distinguished from a situation in which a defendant is either guilty of the greater offense or of no offense at all. *See People v. Lundy*, 188 Colo. 194, 533 P.2d 920 (1975); *People v. Reed*, 180 Colo. 16, 502 P.2d 952 (1972); *Vigil v. People*, 158 Colo. 268, 406 P.2d 100 (1965). An instruction on a lesser offense is not required unless there is evidence to support it. Section 18–1–408(6), C.R.S. 1973 (now in 1978 Repl. Vol. 8); *e.g., People v. Lundy, supra; Johnson v. People*, 172 Colo. 72, 470 P.2d 37 (1970).

Our review of the evidence persuades us that there is no rational basis for a verdict acquitting the defendant of aggravated robbery and convicting him of simple robbery. *See* section 18–1–408(6), C.R.S. 1973, (now in 1978 Repl. Vol. 8).

## II.

### A.

First, we must decide whether the whiskey bottle with which Mr. Newton was struck was a deadly weapon as a matter of law. "Deadly weapon" is defined by section 18–1–901(3)(e), C.R.S. 1973 (now in 1978 Repl. Vol. 8), as:

"'Deadly weapon' means any firearm, knife, bludgeon, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or intended to be used is capable of producing death or serious bodily injury."

The People argue that a full quart bottle of whiskey is a bludgeon.

■ We have decided recently that the statutory clause "which in the manner it is used or intended to be used is capable of producing death or serious bodily injury" modifies "other weapon, device, instrument, material, or substance, whether animate or inanimate," and does not modify "firearm, knife, bludgeon." *People v. McPherson*, Colo., 619 P.2d 38 (1980); *People v. Lahr*, Colo., 615 P.2d 707 (1980). Therefore, if the bottle of whiskey in this case was a bludgeon, it was a deadly weapon, and there was no factual issue to submit to a jury on whether the "deadly weapon" element of the offense of aggravated robbery had been proved. In deciding whether the bottle was a bludgeon, we are guided by the principle that criminal laws are to be strictly construed in favor of the accused. *E.g., Pigford v. People*, 197 Colo. 358, 593 P.2d 354 (1979); *People v. Cornelison*, 192 Colo. 337, 559 P.2d 1102 (1977).

■ A bludgeon is defined in Webster's Third New International Dictionary as a short stick used as a weapon, usually having one thick or loaded end. A whiskey bottle is designed for use as a beverage container and not as a weapon. Although it can be used as a weapon, as it was here, the same is true of many other heavy objects. The statute expressly prescribes a test to determine whether items other than firearms, knives, and bludgeons are deadly weapons,

based not on the intrinsic nature of the items but upon their use or intended use. We conclude that a quart bottle of whiskey is not a bludgeon but that it may satisfy the statutory test as a "device, instrument, material, or substance, . . . which in the manner it is used . . . is capable of producing death or serious bodily injury."

We are aware of decisions in other states in which it has been held that a bottle is a bludgeon within the meaning of criminal statutes prescribing a more severe sanction when a crime is committed by an offender in possession of, or by use of, specified types of dangerous weapons. *See State v. Tims,* 129 N.J.Super. 399, 324 A.2d 45 (1974) (statute contained extensive list of weapons, including a bludgeon, and ended with the general category "any object or device, whether toy or imitation, having an appearance similar to or capable of being mistaken for any of the foregoing"); *Patton v. State,* 252 Ind. 678, 251 N.E.2d 559 (1969) (bottle of radiator acid is a bludgeon, when used to strike a victim); *Short v. State,* 234 Ind. 17, 122 N.E.2d 82 (1954) (soft drink bottle is "bludgeon, billy club, [or] blackjack" when used as those weapons would be used).

■ In other cases, however, statutes proscribing possession or certain uses of dangerous weapons have been construed to require a factual determination based on surrounding circumstances to determine whether an object not designed for use solely as a dangerous weapon is such a weapon. *See, e.g., State v. Baldwin,* 571 S.W.2d 236 (Mo.1978); *Clarke v. United States,* 256 A.2d 782 (D.C.App. 1969). The manner of use of the bottles considered in *Patton v. State, supra,* and *Short v. State, supra,* was of central importance in classifying the bottles as bludgeons. This latter approach is the one contemplated by our own statute, which creates two separate categories. Firearms, knives, and bludgeons are deadly weapons by their essential nature. All other items may or may not be deadly weap-

ons, depending upon how they are used or intended to be used.

The legislative wisdom in not creating a statute under which an object which could be used to strike a victim must be characterized as a bludgeon if it is to be classified as a deadly weapon at all is well illustrated by the example of a bottle. Bottles are found in various shapes, sizes, and weights and may be made of rigid or flexible materials. Only by evaluating the nature and use or intended use of a bottle in a particular case can it be determined whether it has that potential for death or serious bodily injury which is the basis for the legislative classification as a deadly weapon.

### B.

■ The People argue that, even if a whiskey bottle is not a bludgeon, the uncontroverted evidence of the nature and extent of Mr. Newton's injuries establishes that the bottle, in the manner it was used, was a deadly weapon because it was capable of producing death or serious bodily injury. We agree. The quart whiskey bottle was full and was made of glass. Mr. Newton was struck on the head hard enough to shatter the bottle and knock him to the floor. The only rational conclusion that a jury could draw is that the whiskey bottle, in the manner it was used by Mr. Newton's assailant, was capable of producing death or serious bodily injury.[3] Thus, it was a deadly weapon as so used, and the deadly weapon question does not provide a basis for instructing the jury on the lesser included offense of robbery.

### III.

■ An additional question of fact must be resolved in favor of the People before it can be concluded that the defendant's crime was aggravated robbery rather than simple robbery. The portion of the

**3.** Serious bodily injury is defined by section 18 1 -901(3)(p), C.R.S. 1973 (now in 1978 Repl. Vol. 8), as follows:

"'Serious bodily injury' means bodily injury which involves a substantial risk of death, seri-

ous permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body."

statute under which the defendant was charged requires that one of the robbers be armed with a deadly weapon and that he "by the use of force, threats, or intimidation puts the person robbed or any other person in reasonable fear of death or bodily injury." [4] We construe the statute to require that the person placed in fear must fear *his own* death or bodily injury, and that the fear must be based in some part upon the presence of a deadly weapon. The evidence establishes that this standard was met. Mrs. Newton testified that she was in the back of the store when she heard the bottle break. As she came to the front of the store to investigate, one of the robbers hit her, and she fell to the floor. While she was lying there, she saw her husband falling to the floor and saw part of the bottle in the hand of her husband's attacker.[5] One of the robbers stood over her and both directed her not to get up. She told the men of her husband's heart condition and pleaded with them not to do anything else to him. From the totality of Mrs. Newton's testimony it was established without contradiction that she was very frightened for her husband and for herself and that this fear related in substantial part to the results of the blow with the whiskey bottle. We determine from the record as a whole that the only conclusion the jury rationally could have drawn was that Mrs. Newton was placed in fear of bodily injury, and that the fear related in some significant part to the use of the whiskey bottle to strike her husband. We find no merit in the contention that the statutory standard was not met because the whiskey bottle was not intact when Mrs. Newton entered the room. Therefore, as with the issue of "deadly weapon," the reasonable fear element does not provide a basis for instructing the jury on the lesser included offense of robbery.

We affirm the judgment of the court of appeals.

4. The information charged the defendant as follows:

"Gary Scott Bowers did unlawfully and feloniously take a thing of value, to–wit: currency from the person and presence of Merle and Helen Newton, the victims, and that the defendant, during the act and immediate flight therefrom had present a confederate, aiding or abetting the perpetration of the robbery, and by use of force, threats and intimidation with a deadly weapon, to–wit: a quart bottle, put said victims and any other person in reasonable fear of death and bodily injury; contrary to C.R.S. 1973, 18–4–302(1)(c), as amended."

5. Testimony of the defendant's accomplice indicated that the bottle was thrown at Mr. Newton from a few feet away.