**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Christopher SALEH, Respondent.**

No. 01SC74.

Supreme Court of Colorado, En Banc.

April 29, 2002.

Rehearing Denied May 20, 2002. *

* Justice COATS does not particiapte.

Ken Salazar, Attorney General, Catherine P. Adkisson, First Assistant Attorney General, Denver, Colorado, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Public Defender, Denver, Colorado, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

A jury found respondent, Christopher Saleh, guilty of second degree reckless assault under section 18–3–203(1)(d), 6 C.R.S. (2001). Saleh kicked the victim down a flight of stairs causing serious bodily injury. We granted certiorari in *People v. Saleh,* 25 P.3d 1248 (Colo.App.2000), to determine whether Saleh's foot qualified as a deadly weapon under section 18–1–901(3)(e), 6 C.R.S. (2001).[1] Because his foot did not actually and directly cause the serious bodily injury, the court of appeals held that Saleh could not be convicted of second degree reckless assault, which requires the use of a deadly weapon. *See* § 18–3–203(1)(d), 6 C.R.S. (2001); *Saleh,* 25 P.3d at 1252. We disagree. Any object, including a foot, may be a deadly weapon depending upon the manner in which it was used. *People v. Ross,* 831 P.2d 1310, 1313 (Colo.1992).

I.

This case arises out of a domestic violence incident between Saleh and his then girlfriend, Janise Apodaca. On the afternoon of February 1, 1998, Saleh and Apodaca were arguing at a Denver bus stop. Following this argument, they went their separate ways. Apodaca decided later that day to end her relationship with Saleh. She arrived at their shared apartment around 9:30 p.m. to pick up some of her clothes, which she needed for a job interview the next morning. However, when Apodaca let herself into their apartment, Saleh was there.

Apodaca proceeded into the bedroom to gather her clothes when Saleh began to argue with her about the break up. Saleh shut the bedroom door and would not allow Apodaca to leave the room for about two and one-half hours. During this extended argument, Saleh shoved Apodaca and she slapped him. Ultimately, Apodaca threatened to jump out of the second-story bedroom window if Saleh would not allow her to leave. Close to midnight, Saleh finally agreed to release Apodaca from the bedroom and she headed out of the room towards the stairs. As Apodaca reached the top of the stairs, Saleh came up behind her, raised his foot, and kicked Apodaca in the back between her shoulder blades, propelling her down the flight of stairs. Despite Apodaca's attempts to stop the fall, she tumbled all the way down thirteen wooden steps. She came to rest on her back at the bottom of the staircase. Due to the fall, Apodaca suffered a severely broken wrist, a sprained ankle, and a fractured pelvis and was hospitalized for six weeks.

The prosecution charged Saleh with one count of first degree assault with a deadly weapon under section 18–3–202(1)(a), 6 C.R.S. (2001). The prosecution added three habitual criminal counts at a later date. The trial court instructed the jury on first degree assault with a deadly weapon and two types of second degree assault as lesser-included offenses. The defense requested a lesser-

1. We granted certiorari on the following issue: "Whether the Court of Appeals erred both factually and legally in holding that the defendant's foot was not a deadly weapon under the facts of this case because it did not 'actually and directly' cause the victim's injuries?"

included offense instruction for third degree assault, but the trial court did not instruct the jurors on that charge. During jury deliberations, the jury deadlocked eleven to one, with eleven jurors favoring conviction on the first degree assault charge. One remaining juror was willing to convict only on second degree reckless assault by means of a deadly weapon. In response to the jury's request for further instructions, the trial court gave the jury a lesser included offense instruction:

> If the jury deadlock centers solely on the degree of guilt rather than the issue of guilt or nonguilt, then the jury should return a guilty verdict on the lesser offense as long as every essential element of the lesser offense is necessarily included in the greater offense and all jurors unanimously agree on the defendant's guilt as to either the greater or lesser offense.

The jury then returned a verdict for second degree reckless assault pursuant to section 18–3–203(1)(d), 6 C.R.S. (2001). Saleh appealed his conviction to the court of appeals.

The court of appeals held that the evidence was insufficient as a matter of law to sustain Saleh's conviction of second degree assault under section 18–3–203(1)(d), and entered judgment on the lesser-included offense of third degree assault. The court of appeals reasoned that the foot itself must be the instrument that actually and directly caused the serious bodily injury in order to qualify as a deadly weapon for a second degree assault conviction. It found that the stairs, rather than Saleh's foot, were the direct cause of the injuries, because there was no evidence that Apodaca sustained any injury where Saleh's foot made contact with her body. Hence, it concluded that Saleh had not committed assault by means of a deadly weapon, and thus could be guilty only of third degree assault.

**2.** Section 18–3–203, 6 C.R.S. (2001), provides in part:

> Assault in the second degree. (1) A person commits the crime of assault in the second degree if:

## II.

We hold that Saleh's conviction for using a deadly weapon is proper under section 18–1–901(3)(e), 6 C.R.S. (2001), because he used his foot in a manner capable of producing serious bodily injury when he kicked the victim down the stairs. The court of appeals misapplied the definition of a "deadly weapon," when it held that "no violation of § 18–3–203(1)(d) occurs unless the foot is itself the instrument that actually and directly causes the serious bodily injury."[2] *People v. Saleh*, 25 P.3d 1248, 1252 (Colo.App.2000).

### A.

#### Deadly Weapon

Colorado has defined what constitutes a "deadly weapon" in section 18–1–901(3)(e), 6 C.R.S. (2001), which states:

> "Deadly Weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury:
>
> (I) A firearm, whether loaded or unloaded;
>
> (II) A knife;
>
> (III) A bludgeon; or
>
> (IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

This case presents the question of whether an object may be a deadly weapon when the object itself does not directly cause the victim's serious bodily injury.

We have consistently analyzed whether objects are deadly weapons by evaluating the manner in which the objects are used. *People v. Ross*, 831 P.2d 1310, 1312 (Colo.1992); *see Bowers v. People*, 617 P.2d 560, 562–63 (Colo.1980)(holding that a whiskey bottle may be a deadly weapon depending on the manner in which it is used); *People v. Bramlett*, 194 Colo. 205, 209, 573 P.2d 94, 96–96 (1977)(stating that any object used in a manner capable of producing death or bodily

> ... (b) With intent to cause bodily injury to another person, he or she causes such injury to any person by means of a deadly weapon; or ... (d) He recklessly causes serious bodily injury to another person by means of a deadly weapon.

injury is a deadly weapon); *Miller v. Dist. Court*, 193 Colo. 404, 407, 566 P.2d 1063, 1066 (1977)("In evaluating whether a device is a deadly weapon, the real issue is whether, in the manner it was used, it could have caused death or serious injury."); *Grass v. People*, 172 Colo. 223, 229, 471 P.2d 602, 605 (1970)(holding that a shoe may be a deadly weapon depending on the manner of its use).

■ Any object can be a deadly weapon if it is used in a manner capable of producing death or serious bodily injury. *Ross*, 831 P.2d at 1313. Body parts can be deadly weapons depending upon the manner in which they are used.[3] *Id.; see also People v. Hayes*, 923 P.2d 221, 227 (Colo.App. 1995)("Any object, including a fist, can be a deadly weapon if it is used or intended to be used in a manner capable of producing death or serious bodily injury."). Whether an object is a deadly weapon does not depend upon the ultimate result of an object's use. The statute does not require that the object actually cause serious bodily injury; rather, it must be "capable of producing" such injury. *See People In Interest of J.R.*, 867 P.2d 125, 127 (Colo.App.1993)("In evaluating whether a device is a deadly weapon, the issue is whether, in the manner it was used, it could have caused death or serious bodily injury.").

In vacating Saleh's second degree assault conviction, the court of appeals reasoned that the object, here the foot, must "actually and directly" cause the serious bodily injury to qualify as a deadly weapon. *Saleh*, 25 P.3d at 1252. Because the stairs directly caused the victim's injuries, Saleh's foot could not be considered a deadly weapon. *Id.* Our case law does not support this statutory construction. *See Ross*, 831 P.2d at 1313; *People v. Mozee*, 723 P.2d 117, 128 (Colo.1986); *Miller*, 193 Colo. at 407, 566 P.2d at 1066 ("[S]ection 18–1–901(3)(e) requires only that in its actual or intended use, the object is capable of producing death or serious injury.").

The court of appeals reasoned that because parts (I), (II) and (III) of section 18–1–901(3)(e) referred to instruments that "can be used in a manner consistent with their design to inflict serious bodily injury," the General Assembly must also have intended part (IV) to apply only to those "things that are themselves the instruments that actually inflict serious bodily injury." *Saleh*, 25 P.3d at 1251. We disagree. The phrase "any other weapon, device, instrument, material or substance, whether animate or inanimate" in section 18–1–901(3)(e) is a general provision applying to any and all objects other than a firearm, knife, or bludgeon. Section 18–1–901(3)(e) limits the scope of "deadly weapon" by including only those objects which "in the manner [they are] used or intended to be used [are] capable of producing death or serious bodily injury." § 18–1–901(3)(e); *Ross*, 831 P.2d at 1313.

■ The court of appeals misconstrued our holding in *Mozee*, by requiring that the object be the "actual and direct" cause of the victim's injuries. *Saleh*, 25 P.3d at 1252. We have not identified such a limitation upon the definition of a deadly weapon; rather, we have interpreted the definition more broadly. *Ross*, 831 P.2d at 1313 ("[W]e have interpreted the phrase to include any object or device."); *Bowers*, 617 P.2d at 563 ("Firearms, knives, and bludgeons are deadly weapons by their essential nature. All other items may or may not be deadly weapons, depending upon how they are used or intended to be used."). Our holding in *Mozee* requires the presence of "an element of causation linking the deadly weapon to the serious bodily injury" for the object to "actually" cause the injury and qualify as a deadly weapon. *Mozee*, 723 P.2d at 128. In *Mozee*, we upheld the defendant's first degree assault conviction for shooting the victim with a gun because there was an element of causation linking the gun to the injury; thus, the victim's injury occurred "by means of" a deadly weapon. *Mozee*, 723 P.2d at 128–29. Although we

---

**3.** The court of appeals stated that "[i]f a deadly weapon includes body parts not actually used to inflict the serious injury, the issue whether the defendant caused serious bodily injury 'by means of a deadly weapon' would be irrelevant in any second degree assault prosecution under § 18–3– 203(1)(d), so long as it was proven that the victim sustained a 'serious bodily injury' resulting from the defendant's actions." *Saleh*, 25 P.3d at 1252. This conclusion is inconsistent with our prior case law and the deadly weapon definition.

stated that it is necessary for the prosecution to prove "the use of the deadly weapon actually caused the serious bodily injury" in order to obtain a first degree assault conviction, our holding in *Mozee* does not require that the injury occur at or near the point on the victim's body where the deadly weapon made contact. *Mozee,* 723 P.2d at 128.[4]

■ We hold that when an object is used in a manner capable of causing death or serious bodily injury, the object used is a deadly weapon within the statutory definition of section 18–1–901(3)(e). Objects which are not inherently deadly, such as feet and hands, can become deadly weapons when used to start an unbroken, foreseeable chain of events capable of producing serious bodily injury or death. Using one's hands to push a victim off a balcony or in front of an oncoming car, or, as in the present case, using one's foot to kick a victim down a flight of stairs are examples of such use.[5]

■ The fact that the victim's injuries can be attributed to the pavement, car, or stairs, does not break the causal chain linking the object to the injury. The jury may properly consider any resulting injury sustained by the victim in making the determination of whether or not an object qualifies as a deadly weapon. *See Bowers,* 617 P.2d at 563 (considering evidence of the victim's injuries in determining that a bottle was used as a deadly weapon). "[I]f the fist or foot strikes the victim with sufficient force to put in motion a sequence of events causing a serious bodily injury, then the evidence is suffi-

cient to sustain the [second degree assault] conviction." *People v. Saleh,* 25 P.3d 1248, 1253 (Colo.App.2000)(Ruland, J., dissenting).

### B.

### Saleh's Foot as a Deadly Weapon

■ In this case, the prosecution argues that Saleh's foot was a deadly weapon because of the manner in which it was used. We agree. Saleh knew that the victim was at the top of the stairs with her back to him. With this knowledge, Saleh kicked the victim in the back between her shoulder blades in order to propel her down the staircase. Kicking someone down a flight of stairs is an action that is capable of causing death or serious bodily injury. By using his foot as he did, Saleh set in motion an unbroken, foreseeable chain of events that resulted in serious bodily injury to the victim. There is a sufficient causal connection between Saleh's foot and the victim's injury to support a second degree assault conviction.[6]

### III.

The court of appeals erroneously vacated Saleh's conviction for second degree assault, section 18–3–203(1)(d), 6 C.R.S. (2001). Saleh used his foot in a manner which is "capable of producing death or serious bodily injury." § 18–1–901(3)(e), 6 C.R.S. (2001). Accordingly, we reverse the court of appeals' judgment and remand this case to

---

**4.** If the shot fired in *Mozee* had not hit the victim, but rather caused him to dive down a flight of stairs to avoid the bullet, the conclusion would have been the same; the gun would still be considered a deadly weapon because it would have been used in a manner capable of causing serious bodily injury or death. *People v. Saleh,* 25 P.3d 1248, 1254 (Colo.App.2000)(Ruland, J., dissenting). An element of causation linking the gun to the injury would exist because the victim would not have been injured by the stairs but for his necessary avoidance of the bullet. In this hypothetical situation, the gun actually causes the serious bodily injury because of the manner in which it is used. It does not matter that the stairs ultimately injured the victim, rather than the gun itself. The injury still occurred "by means of" the gun for the purposes of an assault with a deadly weapon charge.

**5.** We are aware that the court in *People v. Brake,* 196 Colo. 575, 588 P.2d 869 (1979) used a contrary example in the context of an equal protection challenge. However, our more recent cases support the interpretation of the term "deadly weapon" we hold to be Colorado law.

**6.** We recognize that a defendant may be guilty of first, second, or third degree assault depending upon the applicable mens rea. The mens rea requirement and severity of the victim's injury differ for assault in the first degree, second degree, and third degree, but the definition of a deadly weapon does not. In each circumstance, the use of the deadly weapon, the foot, is the same. It is the ultimate result of the foot's use, in combination with the defendant's mental state, that determines the degree of assault.

that court with instructions to reinstate Saleh's conviction for second degree assault.

Justice COATS does not participate.