22CA2150 Peo v Martinez 08-21-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA2150
Adams County District Court No. 21CR2102
Honorable Roberto Ramírez, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Eric Julio Martinez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Schock and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

Philip J. Weiser, Attorney General, Jenna Baker, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Eric Julio Martinez, appeals the judgment entered on a jury verdict finding him guilty of first degree assault. We affirm.

## I.     Background

¶ 2     One summer afternoon, the victim — Martinez's girlfriend — approached a stranger and asked him to call 911. The victim had a large head wound and blood covering the side of her face and running "down her dress" to her feet. She was crying and appeared frightened.

¶ 3     After the man called 911, an ambulance and police officers soon arrived. The victim reported that Martinez had hit her repeatedly. The victim suffered multiple lacerations and a serious brain bleed.

¶ 4     The prosecution charged Martinez with first degree assault causing serious bodily injury with a deadly weapon (his hands and fists).

¶ 5     While awaiting trial, Martinez admitted on a jail-recorded call that he slapped "the fuck out of [his] bitch" and that because he had "boxing skills from back in the day" the prosecution was "trying to say [his] hands [were] fucking deadly weapons."

¶ 6    Martinez didn't testify at trial, but his counsel defended on the theory that Martinez acted in self-defense. As to the victim's head injury, defense counsel argued that the victim was drunk and fell, causing the brain bleed.

¶ 7    The jury convicted Martinez as charged and found that the assault was an act of domestic violence. The district court sentenced Martinez to fourteen years in prison.

¶ 8    On appeal, Martinez contends that the district court erred by (1) denying his motion to suppress; (2) admitting evidence that he was a boxer; and (3) allowing prosecutorial misconduct in rebuttal closing argument. He also contends that the cumulative effect of these errors requires reversal. We address each contention in turn.

## II.    Motion to Suppress

¶ 9    Martinez contends that the district court erred by denying his motion to suppress statements he made to a police officer before he was arrested. Specifically, he contends that the officer's questioning constituted custodial interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree.

## A. Additional Background

¶ 10 After the victim reported the assault and identified her attacker, officers located Martinez at a nearby bus stop. Officer Patrick Toelle first contacted Martinez and called out, "Hey, buddy. Eric, yeah, you mind telling me what's going on . . . ?" Martinez confirmed his name, where he lived, and his girlfriend's name. Observing blood on Martinez's face and shirt, Officer Toelle asked, "What's that from?" Martinez responded that his girlfriend had been drinking and "got in a fight with her home girl." He said that he tried to get his girlfriend to go, but she scratched him and took off. Martinez said he didn't know if his girlfriend had been hurt in the fight with her friend.

¶ 11 Less than two minutes later, officers asked Martinez to sit down. They then took his backpack and arrested him. When Martinez asked why he was under arrest, Officer Toelle explained that he didn't know what had happened and they would talk more about it. One other officer was visibly present while Officer Toelle spoke with Martinez, and a couple of other officers arrived as the brief encounter unfolded.

¶ 12    Before trial, Martinez moved to suppress the statements he had made to Officer Toelle, arguing that he was in custody and interrogated in the absence of a proper *Miranda* advisement.  After a hearing, the district court denied the motion, finding that Martinez was not in custody when he answered Officer Toelle's questions before he was handcuffed.

### B.    Legal Principles and Standard of Review

¶ 13    To uphold the Fifth Amendment privilege against self-incrimination, officers must provide certain warnings before a custodial interrogation.  *Miranda*, 384 U.S. at 444; *see also People v. Bohler*, 2024 CO 18, ¶ 18.  "Custody for *Miranda* purposes depends on whether a reasonable person in the defendant's position would believe they were in police custody 'to a degree associated with a formal arrest.'"  *Bohler*, ¶ 19 (citation omitted).  To make this determination, we consider, among other factors, (1) the time, place, and purpose of the encounter; (2) the persons present during the encounter; (3) the words an officer spoke to the defendant; (4) the officer's tone of voice and demeanor; (5) the length and mood of the encounter; (6) whether officers placed any limitation of movement or other form of restraint on the defendant; (7) the officer's response to

4

any questions the defendant asked; (8) whether the officer gave directions to the defendant; and (9) the defendant's verbal or nonverbal response to such directions. *Id.*; *see also People v. Matheny*, 46 P.3d 453, 465-66 (Colo. 2002).

¶ 14 Whether a person is in custody for *Miranda* purposes is a mixed question of law and fact. *Bohler*, ¶ 17. We defer to the district court's factual findings when they're supported by the record, although we may independently review recordings, including police body camera footage. *Id.* We review de novo the legal question whether those facts, taken together, establish that the person was in custody. *Id.*

### C.    Martinez Wasn't in Custody

¶ 15 Considering the nonexclusive factors outlined above and based on our own independent review of the bodycam footage, we agree with the district court that Martinez wasn't in custody when Officer Toelle initially questioned him.

¶ 16 While the purpose of the initial contact was to identify the individual who matched the description of the alleged assailant, the encounter occurred at a public bus stop in the middle of the day. *See id.* at ¶ 20 (concluding that public questioning next to a four-

lane street — even though at night — was neutral); *see also People v. Cline*, 2019 CO 33, ¶¶ 21-22 (noting that an interaction in a parking area "in broad daylight" weighed against custody).

¶ 17 Officer Toelle and one other officer initially contacted Martinez. Though in uniform, neither officer displayed any weapons. While a couple of other officers arrived after the initial contact, they remained in the background. Only Officer Toelle questioned Martinez. *See People v. Pleshakov*, 2013 CO 18, ¶ 30 (the defendant wasn't in custody when, despite the presence of four officers at the scene, only one officer spoke with the defendant "while the remaining officers engaged in other tasks").

¶ 18 And contrary to Martinez's assertion, the questioning was not confrontational or accusatory. Officer Toelle remained calm, and his tone was conversational. *See People v. Davis*, 2019 CO 84, ¶ 34 (the defendant wasn't in custody when the "overall mood of the interrogation" was "calm and conversational"). The questions themselves were neutral. Namely, Officer Toelle asked about Martinez's identity, where he lived, his girlfriend's name, and why he was bleeding. *See Bohler*, ¶ 25 (noting that an officer's neutral

questions about why the defendant was bleeding weighed against custody).

¶ 19 The questioning lasted less than two minutes, *see People v. Willoughby*, 2023 CO 10, ¶ 33 (noting that the more brief the encounter, the less likely that it is custodial); no threats were made; and Martinez was neither handcuffed nor restrained during the questioning, *see People v. Garcia*, 2017 CO 106, ¶ 37 (concluding that the defendant was not in custody because, among other things, he "was never physically restrained and the officers made no threats, promises, or even references to criminal liability").

¶ 20 Though Martinez is correct that he was ultimately instructed to sit down and put his hands behind his back, that happened at the end of the short encounter. By that time, the questioning was over.

¶ 21 Based on the totality of the circumstances, we conclude that Martinez was not in custody when Officer Toelle questioned him. The district court therefore properly refused to suppress the statements Martinez made to Officer Toelle before he was arrested.

### III.    Boxing Evidence

¶ 22    Martinez argues that the district court erred by admitting evidence that he told the victim he was a boxer whose hands were registered weapons.  He maintains that the evidence was irrelevant, unfairly prejudicial, and constituted inadmissible other act evidence.  Again, we disagree.

### A.    Additional Background

¶ 23    Before trial, defense counsel moved to exclude testimony that Martinez was a boxer because the victim had "no personal knowledge" of Martinez's "history as an alleged boxer" and because the evidence would be "more prejudicial than probative."  Martinez didn't argue that the evidence was improper other act evidence.  The court denied the motion, ruling that the victim "may certainly testify as to anything [Martinez] told her."

¶ 24    The victim testified at trial that Martinez told her that "he was a boxer," "he knew how to fight and hurt somebody," and his "hands were registered weapons."  The jury also heard Martinez's admission on the jail-recorded call that he beat the victim and had boxing experience.  (Martinez didn't object to the admission of these portions of the recorded call.)  The prosecution argued in closing

that Martinez was guilty of first degree assault because he caused serious bodily injury to the victim using his fists as deadly weapons.

B.    The Boxing Evidence Was Relevant and Not Unduly Prejudicial

¶ 25    Martinez contends that evidence about his boxing experience was not relevant to any material issue at trial under CRE 401, and, even if marginally relevant, the evidence was unduly prejudicial under CRE 403.

¶ 26    While Martinez raised an objection under CRE 403 before the district court, the parties dispute whether he preserved his CRE 401 objection.  Because the evidence was properly admitted, we needn't resolve the dispute.

¶ 27    We review a district court's evidentiary rulings for an abuse of discretion.  *People v. Brown*, 2022 COA 19, ¶ 69.

¶ 28    A person commits first degree assault if, "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon."  § 18-3-202(1)(a), C.R.S. 2024.  Fists (and other body parts) may be deadly weapons if used or intended to be used in a manner "capable of producing death or serious bodily injury."  *People v. Ross*, 831 P.2d

1310, 1313 (Colo. 1992), *abrogated on other grounds by Montez v. People*, 2012 CO 6, ¶ 16; *People v. Saleh*, 45 P.3d 1272, 1276 (Colo. 2002) (noting that feet and hands "can become deadly weapons"); *see also* § 18-1-901(3)(e)(II), C.R.S. 2024 (defining "[d]eadly weapon").

¶ 29     If evidence is probative of a material fact, then it is relevant and presumptively admissible unless its probative value is substantially outweighed by other concerns, like the danger of unfair prejudice.  *Rojas v. People*, 2022 CO 8, ¶ 3; *see also* CRE 401-03.  "[E]vidence of an element" of the offense "is always relevant" and "not unfairly prejudicial."  *People v. Kembel*, 2023 CO 5, ¶ 54.

¶ 30     Evidence that Martinez had boxing experience was probative of his ability to throw and land a punch that could cause serious bodily injury.  It was also probative to show that, as used against the victim, his fists were deadly weapons.  *Cf. People v. Castro*, 10 P.3d 700, 703 (Colo. App. 2000) ("[T]estimony regarding the victim's boxing lessons may be admissible in relation to the issue of whether his fists could have been a deadly weapon.").  The boxing evidence

was therefore relevant to prove the elements of first degree assault. *See Kembel*, ¶ 54.

¶ 31    Nor was the evidence that Martinez had boxing experience unfairly prejudicial.  Evidence is only unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as sympathy, hatred, contempt, retribution, or horror.  *People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002).  Nothing about Martinez's boxing experience is inherently prejudicial or inflammatory.  And even if the boxing evidence damaged Martinez's defense — as Martinez suggests — evidence isn't unfairly prejudicial under Rule 403 simply because it harms the defendant's case.  *See Kembel*, ¶ 53; *see also People v. Dist. Ct.*, 785 P.2d 141, 147 (Colo. 1990) ("[E]vidence [is not] unfairly prejudicial simply because it damages the defendant's case.").

¶ 32    Because it was relevant and not unfairly prejudicial, the district court properly admitted the boxing evidence.[1]

---

[1] To the extent that Martinez contends that the boxing evidence was inadmissible because the victim didn't have personal knowledge about his boxing experience, Martinez doesn't explain how the court erred by finding that the victim could testify to statements Martinez had made to her.

## C. The Boxing Evidence Wasn't Inadmissible Other Act Evidence

¶ 33    Martinez also argues that the boxing evidence violated CRE 404(b) because the evidence "cannot be separated from the prohibited inference that Martinez is a violent person."

¶ 34    Because Martinez failed to preserve this contention, we will reverse only if the error was plain. That means error that was "obvious, substantial, and 'so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'" *People v. Snelling*, 2022 COA 116M, ¶ 33 (citation omitted).

¶ 35    Evidence of "any other crime, wrong, or act" is not admissible to prove a defendant's character to show that he acted in conformity with that character in committing the charged offense. CRE 404(b)(1). But if the other act evidence "does not suggest bad character, Rule 404(b) does not apply and admissibility is governed by Rules 401-403." *Rojas*, ¶ 52.

¶ 36    We are skeptical that evidence that someone is a boxer suggests bad character. Boxing is simply a sport. Thousands of individuals engage in competitive boxing at amateur and professional levels. Being a boxer doesn't make an individual prone

to violence outside the ring, nor does it suggest bad character. Indeed, Martinez doesn't explain how a person's participation in an organized sport indicates a propensity toward violence or to commit first degree assault.

¶ 37 But even assuming some propensity inference could be made, because nothing about Martinez's boxing experience obviously suggests bad character, we cannot conclude that the district court plainly erred by not considering Rule 404(b) without the benefit of an objection. *See People v. Crabtree*, 2024 CO 40M, ¶ 42. And because Martinez admitted that he assaulted the victim in a recorded jail call, we are confident that the boxing evidence didn't impact the reliability of the conviction or the fairness of the trial.[2] *See People v. Perez*, 2024 COA 94, ¶¶ 26, 32.

¶ 38 We are not persuaded otherwise by *Kaufman v. People*, 202 P.3d 542 (Colo. 2009). *Kaufman* was decided before the Colorado Supreme Court updated the CRE 404(b) doctrine in *Rojas*, and we are guided by *Rojas*. But even considering *Kaufman*, Martinez

---

[2] Though the victim testified that Martinez told her that his hands were registered weapons, any claimed prejudice from that testimony was mitigated by the prosecution's admission that no such registry exists.

overlooks the fact that, in that case, the supreme court concluded evidence of the defendant's specialized "training in knives" was properly admitted when the defendant was alleged to have stabbed two victims (though general evidence of his martial arts training wasn't relevant to the stabbing). *Id.* at 556-57. Like the *Kaufman* defendant's knife training, Martinez's boxing training was relevant to whether he committed first degree assault using his fists. Thus, *Kaufman* also supports the admission of the boxing evidence.

## IV. Prosecutorial Misconduct

¶ 39 Martinez contends that the prosecutor committed misconduct during rebuttal closing argument by telling the jury that the victim was "honest" and testified to "what happened." We see no misconduct.

¶ 40 Defense counsel argued in closing that Martinez was not the aggressor and that he "walked away from a drunk woman who was antagonizing him, who was pissed at him, who threw things at him, and who ultimately attacked and injured him." And defense counsel argued that the victim "[wa]s stretching the truth" and that "someone who is intoxicated may not be able to accurately assess

14

what's happening and may not be able to accurately recall what happened."

¶ 41      In rebuttal closing, the prosecutor countered the attacks on the victim's credibility, arguing as follows:

- "[The victim] was extremely forthcoming on the witness stand. It's not easy to come in here in front of 13 strangers, lawyers, a judge, perhaps an audience . . . and talk about how you are an alcoholic. She was forthcoming. She was honest. She didn't hide from her past."

- "[The victim] answered every question for better or for worse with what happened, with honesty. And that's not easy to do."

- "This is not someone who like the defense wants you to think has it out for him, wants him in trouble. That is, like, the opposite of how she came across. That is the opposite of what we have here. That's why she is to be believed. That's credibility."

- "This is just what happened. She is just telling you the facts."

¶ 42    Though Martinez didn't object to these rebuttal comments at trial, he now says that they were improper expressions of personal opinion that vouched for the victim's credibility.

¶ 43    We apply a two-step analysis to claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). We first determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* If it was, we next consider whether that conduct warrants reversal. *Id.* We review unpreserved claims of prosecutorial misconduct for plain error. *Id.* at 1097.

¶ 44    While it's improper for a prosecutor to communicate their opinion on the truth or falsity of witness testimony during closing argument, *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005), a prosecutor may respond to defense counsel's argument, comment on the evidence, and argue reasonable inferences that may be drawn from the evidence, *People v. Roadcap*, 78 P.3d 1108, 1113-14 (Colo. App. 2003).

¶ 45    The prosecutor's rebuttal argument was not based on opinion but rather was a fair response to defense counsel's closing argument. Indeed, the prosector countered defense counsel's claim

16

that the victim was drunk and could not remember what happened by specifically directing the jury's attention to the 911 call, the victim's admission to drinking, and the bodycam footage of the police interview with her. From the evidence, the prosecutor properly argued why the jury should believe the victim. That's not an opinion; it's fair argument. *See Domingo-Gomez,* 125 P.3d at 1051 ("[C]ounsel may properly argue from reasonable inferences anchored in the facts in evidence about the truthfulness of a witness' testimony.").

¶ 46 But even if we assume that any of the rebuttal comments could be construed as improper expressions of personal opinion, we cannot conclude that any of the comments were so obviously improper that the district court should have intervened without the benefit of an objection. *See Cardman v. People,* 2019 CO 73, ¶ 34. Nor — given Martinez's admission to assaulting the victim — did any of the comments so undermine the fairness of the trial as to cast doubt on the reliability of the judgment of conviction. *See Domingo-Gomez,* 125 P.3d at 1053 (considering, among other factors, "the strength of the evidence supporting the conviction" to

determine whether prosecutorial misconduct undermined the reliability of the judgment of conviction).

## V. Cumulative Error

¶ 47 Martinez contends that, collectively, the district court's errors violated his right to a fair trial, entitling him to a new one. *See Howard-Walker v. People*, 2019 CO 69, ¶ 24. But cumulative error requires multiple errors resulting in cumulative prejudice. *Id.* at ¶ 25. Because we disagree that the district court committed multiple errors, cumulative error doesn't apply.

## VI. Disposition

¶ 48 The judgment is affirmed.

JUDGE SCHOCK and JUDGE TAUBMAN concur.