23CA1701 Peo v Gurule 02-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1701
Adams County District Court No. 22CR861
Honorable Jeffrey Smith, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gino Manuel Gurule,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE WELLING
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 5, 2026

---

Philip J. Weiser, Attorney General, Yaried A. Hailu, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Gino Manuel Gurule, appeals his conviction for one count of assault with a deadly weapon.  We affirm.

## I.     Background

¶ 2     In February 2021, a delivery driver, Reinaldo Padilla, parked in an alley to make a delivery to a deli.  While Padilla and the deli owner unloaded the truck, an SUV driven by Gurule pulled into the alley.  Padilla and the deli owner motioned for Gurule to back out of the alley and go a different way.  But Gurule didn't move and instead waited in his SUV in the alley for twenty to thirty minutes.

¶ 3     Once Padilla and the deli owner had finished unloading the truck, they went inside to complete paperwork and confirm the delivery count.  Soon after, Padilla exited through the back of the deli, then he walked around to the front of the deli to use the restroom and buy a drink.

¶ 4     Gurule followed Padilla into the deli and began yelling at him to move his truck.  The two yelled back and forth at each other for less than a minute before Gurule exited the deli.  Padilla left the deli soon after to move his truck.

¶ 5     As Padilla made his way to his truck, Gurule quickly moved towards him, drawing a sword and holding it over his head.  Padilla

ducked and drove his head into Gurule's chest, dropping the items he had been holding. When the two collided, Padilla felt something cut his ear and the side of his head. Also during the collision, Padilla pulled a knife from his pocket and stabbed Gurule.

¶ 6 After the altercation, Gurule put the sword in the back of his SUV, got in, and left the scene. Gurule drove home, where his mother called 911. One of the deli customers also called 911 at the scene. Gurule was transported to a hospital, where officers interviewed him.

¶ 7 After obtaining a search warrant for Gurule's SUV, police recovered a sword from the driver's side backseat of the SUV. Gurule was arrested and charged with second degree assault (bodily injury caused by a deadly weapon) pursuant to section 18-3-203(1)(b), C.R.S. 2025.

¶ 8 At trial, Gurule argued that he had acted in self-defense. The prosecution asserted that Gurule was the initial aggressor and that it was Padilla who had acted in self-defense.

¶ 9 During trial, Padilla testified that after Gurule had confronted him in the deli, he went to move his truck and that's when Gurule came at him, wielding a sword above his head. He further testified

that once the two collided, "some part of the sword" made contact

with him, and that afterwards he was bleeding and felt pain:

> PROSECUTION: [W]ell, first of all, did the sword actually contact you?
>
> PADILLA: Some part of the sword did. It got my ear, got the back of my head. I was sore on the back of my neck for a few days, but I don't know what part of the sword hit me. There was some blood on my ear and a little scrape down the side of my head.

¶ 10    On cross-examination, Padilla clarified that he wasn't certain

what had caused his injuries:

> PADILLA: Something hit me back here. Whether it was the butt of the knife, or a sword, or whether it was he just nicked me, I have no idea. It could have been his fingernail for all I know. Whatever cut me, cut me. It felt — it was a stinging effect.
>
> DEFENSE ATTORNEY: You just said that . . . you don't know what you were hit with, right?
>
> PADILLA: I know the sword was right here . . . [a]nd I was in his chest.
>
> DEFENSE ATTORNEY: Sure. But you don't know what connected to your ear?
>
> PADILLA: Correct.

¶ 11    Padilla described the sword Gurule used as being between

twenty-seven and thirty inches long with a curved blade and a

3

brown wooden handle.  When presented with the sword that had been seized pursuant to the search warrant, however, Padilla testified that it wasn't the sword Gurule had used during the altercation.

¶ 12    Jeffrey Bebout, a bystander who had observed the incident from across a parking lot, testified that, although his view had been partially obstructed, he saw Gurule move towards Padilla with his arms raised and strike Padilla, and that Padilla dropped his belongings on impact.  Bebout further testified that, after the altercation, he walked closer and saw that Gurule was bleeding.

¶ 13    While Bebout didn't "note" seeing a sword before the altercation, he said that he saw Gurule holding one afterward.  He also testified that he watched Gurule put the sword into the backseat of his SUV.  Bebout described the blade of the sword as straight and measuring between ten and twenty-four inches long.

¶ 14    The responding officer, Detective Troy Gordanier, testified that, based on Bebout's report, he searched the backseat of Gurule's SUV for a sword — where he retrieved the sword that was admitted into evidence.  This was the sword that Padilla didn't recognize during his testimony.  Detective Gordanier testified that he ended

his search of the SUV once he found the sword because it matched the description he was given of a "decorative-type sword" and he had no reason to believe there would be more swords in the vehicle.

¶ 15    The prosecution presented body camera footage of the responding officers' interview with Gurule at the hospital. In the footage, Gurule states that he used a "hobbit sword" in self-defense against Padilla. During that interview, Gurule said, "It's not a real sword, it's not sharp."

¶ 16    The prosecution also introduced photos of Padilla's injuries. The photos show a red mark above Padilla's eye, two cuts, and dried blood on Padilla's left ear. Padilla testified that none of these injuries were present before the altercation with Gurule.

¶ 17    The jury found Gurule guilty of second degree assault with a deadly weapon. The trial court sentenced Gurule to eight years in the custody of the Department of Corrections.

## II.    Analysis

¶ 18    On appeal, Gurule contends that the prosecution presented insufficient evidence that he committed second degree assault. Specifically, he contends that there was insufficient evidence to establish that (1) Gurule carried out the attack "by means of a

deadly weapon" and (2) the sword (or any deadly weapon) actually caused any of Padilla's injuries. We reject both contentions and, therefore, affirm the trial court's judgment.

¶ 19   In addition, in a footnote in his opening brief, Gurule requests that his case be remanded to the trial court for correction of the mittimus. As discussed *infra* Part II.B, we agree and remand on this issue only.

## A.   Sufficiency of the Evidence

### 1.   Standard of Review

¶ 20   We review the record de novo to determine whether the evidence was both substantial and sufficient to support the conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt. *People v. Perez*, 2016 CO 12, ¶ 8. We look at all the evidence — both direct and circumstantial — as a whole to make this determination. *People v. Baker*, 178 P.3d 1225, 1233 (Colo. App. 2007).

¶ 21   We give the prosecution the benefit of every reasonable inference that can be fairly drawn from the evidence. *Perez*, ¶ 25. While those inferences "must be supported by a 'logical and convincing connection between the facts established and the

conclusion inferred,'" we don't "serve as a thirteenth juror or invade the province of the jury." *Id.* (citations omitted). "[I]t is the fact finder's function in a criminal case to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence." *People v. McIntier*, 134 P.3d 467, 471 (Colo. App. 2005).

### 2.     Application

¶ 22     Gurule was charged with and convicted of second degree assault in violation of section 18-3-203(1)(b). Thus, at trial, the prosecution had to prove, beyond a reasonable doubt, that Gurule, "[w]ith intent to cause bodily injury to another person, . . . cause[d] such injury to any person by means of a deadly weapon." § 18-3-203(1)(b).

¶ 23     A "[d]eadly weapon" is defined, in relevant part, as "[a] knife, bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate, that, *in the manner it is used* or intended to be used, is capable of producing death or serious bodily injury." § 18-1-901(e)(II), C.R.S. 2025 (emphasis added). In turn, "[i]n common usage, . . . a 'weapon' is defined as 'an instrument of offensive or defensive combat: something to fight

7

with: something (as a club, sword, gun, or grenade) used in destroying, defeating, or physically injuring an enemy.'" *People v. Esparza-Treto*, 282 P.3d 471, 476 (Colo. App. 2011) (quoting Webster's Third New International Dictionary 2589 (2002)).

¶ 24  Determining whether an instrument is a deadly weapon is a two-step inquiry. *People v. Stewart*, 55 P.3d 107, 117 (Colo. 2002). First, was the object used or intended to be used as a weapon? *Id.*; *Esparza-Treto*, 282 P.3d at 476. Second, did the defendant use the object in a manner capable of causing serious bodily injury? *Stewart*, 55 P.3d at 117; *People v. Saleh*, 45 P.3d 1272, 1275 (Colo. 2002). With these principles in mind, we turn to the merits of Gurule's sufficiency of the evidence challenges.

### a.  By Means of a Deadly Weapon

¶ 25  Gurule first contends that the prosecution presented insufficient evidence that he carried out the attack "by means of a deadly weapon." His argument is twofold. First, he argues that the record doesn't "clearly establish" what he used to attack Padilla. Second, he argues that the evidence regarding the weapon that he allegedly used failed to satisfy the statutory definition of a "deadly weapon." We disagree on both fronts.

8

¶ 26    First, the direct and circumstantial evidence admitted at trial amply supports that Gurule used a sword to attack Padilla. This includes testimony from Padilla, Bebout, and Detective Gordanier, as well as Gurule's own statements to police.

¶ 27    Padilla testified that Gurule came towards him with a sword raised over his head. Similarly, Bebout testified that he observed Gurule approach Padilla with his arms raised. While Bebout didn't "note" Gurule holding a sword before the altercation, he observed Gurule holding a sword immediately after. Bebout also testified that shortly after the altercation he saw Gurule put the sword in the backseat of his SUV — exactly where Detective Gordanier found a sword while executing a search warrant of Gurule's SUV. Finally, Gurule told police that he had used a sword in the altercation, albeit, according to him, in self-defense.

¶ 28    As Gurule points out, the witnesses offered inconsistent descriptions of the sword at trial. Padilla described a curved-blade sword with the blade measuring between twenty-seven and thirty inches, while Bebout described a straight-blade sword with a blade measuring between ten and twenty-four inches. Additionally, the sword Detective Gordanier seized, and that was presented at trial,

appears to have a slightly curved blade, with the blade measuring approximately twenty-six and a half inches long. Padilla also denied that the sword produced at trial was the sword Gurule used during the altercation.

¶ 29     But these inconsistencies in the description of the sword don't support the conclusion that there was insufficient evidence for the jury to conclude that Gurule used one during the altercation because "evidence is not insufficient simply because it conflicts." *People v. Lawrence*, 2019 COA 84, ¶ 23, *aff'd*, 2021 CO 28. Indeed, there was ample evidence — both direct and circumstantial — to support a finding that Gurule used a sword in the attack on Padilla.

¶ 30     Second, Gurule argues that even if there was sufficient evidence to establish that he used a sword, there was insufficient evidence to prove that the sword met the definition of a "deadly weapon." Gurule argues that, instead, the evidence shows that the sword he used was a decorative "hobbit" sword that wasn't sharp. Further, he argues that because Padilla testified that the sword produced at trial wasn't the sword Gurule had used, the prosecution didn't satisfy its burden to prove that the sword Gurule

wielded was a deadly weapon.  Again, we disagree with both contentions.

¶ 31    The mere fact that evidence permits more than one reasonable inference doesn't mean it's insufficient to sustain a conviction.  *See Perez*, ¶ 31.  Instead, we must view the evidence in the light most favorable to the prosecution.  *Id.*  Doing so here, we conclude that there is sufficient support in the record for a jury to reasonably find that the sword used was a deadly weapon.

¶ 32    To begin, we reject the implied premise that a decorative item can't meet the definition of a deadly weapon.  The law is clear that whether an item is a deadly weapon doesn't turn on what the item is, but instead how it is used.  *Saleh*, 45 P.3d at 1275 ("Any object can be a deadly weapon if it is used in a manner capable of producing death or serious bodily injury.").  For example, a fist with rings, *People v. Hayes*, 923 P.2d 221, 227 (Colo. App. 1995); a whiskey bottle, *People v. Bowers*, 600 P.2d 95, 96 (Colo. App. 1979), *aff'd*, 617 P.2d 560 (Colo. 1980), *superseded by statute on other grounds*, Ch. 212, sec. 2, § 18-1-903(3)(e), 1981 Colo. Sess. Laws 972; and even a shoe, *Grass v. People*, 471 P.2d 602, 605 (Colo.

1970), can be considered a deadly weapon if used in a deadly manner.

¶ 33    Here, the evidence was sufficient to establish that Gurule used a sword.  Whether the sword's primary purpose was decorative or for use in combat doesn't change the way it was used.  According to the evidence presented at trial, Gurule quickly moved toward Padilla with the sword raised above his head and then struck him with it.  Furthermore, the jury could reasonably infer that striking someone with a metal blade from above can cause serious bodily injury, no matter how sharp the blade is.  Thus, there was sufficient evidence to support a conclusion that Gurule's use of the sword made it a deadly weapon, regardless of its sharpness or whether its primary purpose was decorative.

¶ 34    Finally, Gurule's contention that the evidence was insufficient because the prosecution may have produced and admitted into evidence the wrong sword is a red herring.  To sustain a conviction, the prosecution isn't required to introduce into evidence the actual weapon, so long as there is other sufficient evidence that the defendant used a deadly weapon in the commission of the offense.  *See People v. Saltray*, 969 P.2d 729, 732 (Colo. App. 1998).  And as

discussed above, even without considering the sword recovered from Gurule's vehicle, the evidence is sufficient to show that Gurule used a sword, and his use of that sword meets the definition of a deadly weapon.

¶ 35 In sum, viewing the totality of the evidence admitted at trial in the light most favorable to the prosecution, we conclude that a jury could reasonably find that Gurule carried out the attack against Padilla by means of a deadly weapon.

### b. Causation

¶ 36 Gurule next contends that the prosecution presented insufficient evidence to show that a deadly weapon — namely, the sword — caused any of Padilla's injuries. Again, we disagree.

¶ 37 Gurule argues that Padilla's testimony — which was later impeached — was the only evidence linking Gurule's sword to Padilla's injuries. Gurule is correct that, although Padilla initially testified that some part of the sword hit him and caused his injuries, on cross-examination he testified that he couldn't be certain what hit him because of his ducked position. This, however, isn't the only evidence the jury had to consider when determining whether Gurule's sword caused Padilla's bodily injuries.

¶ 38    While there is no direct evidence of the point of contact aside from Padilla's impeached testimony, there is ample circumstantial evidence from which a jury could reasonably conclude that the sword caused Padilla's injuries.  In addition to Padilla's testimony, Bebout testified that he observed Gurule move towards Padilla with his arms raised and strike Padilla.  And after the altercation, Bebout saw Gurule holding a sword and Padilla bleeding from the head.  The prosecution also admitted photographs of Padilla's injuries after the incident that showed a red mark above Padilla's eye, two cuts, and dried blood on Padilla's left ear.  It was the jury's task, as the fact finder, to determine what caused those injuries.

¶ 39    Just because a reasonable mind could conclude differently doesn't mean there is insufficient evidence to satisfy the causation element.  *See People v. Carlson*, 72 P.3d 411, 416 (Colo. App. 2003).  Simply put, viewing all the evidence in the light most favorable to the prosecution, there was substantial and sufficient evidence to support a conclusion that Gurule's sword caused Padilla's injuries.

### B.    Mittimus

¶ 40    Finally, Gurule contends that the mittimus needs to be corrected.  The mittimus states that Gurule pleaded guilty to the

14

sole count of the information. Gurule, however, pleaded not guilty and was found guilty following a jury trial.

¶ 41     "Clerical mistakes in judgments . . . may be corrected by the court at any time . . . ." Crim. P. 36. "When the mittimus is incorrect, we must remand to allow the trial court to correct it." *Esparza-Treto*, 282 P.3d at 480. Because the mittimus incorrectly characterizes Gurule's plea, we remand this case with instructions that the trial court correct the mittimus to reflect that Gurule was found guilty after trial.

### III.   Disposition

¶ 42     For the reasons set forth above, we affirm the judgment of conviction and remand the case to the trial court to correct the mittimus to reflect that Gurule was found guilty after trial.

JUDGE TOW and JUDGE LIPINSKY concur.